United States Court of Appeals,

Fifth Circuit.

No. 93-2272

Summary Calendar.

Allan JAMES, et al., Plaintiffs,

v.

Suzanne FRAME, et al., Defendants.

In re Suzanne FRAME, Appellant.

Nov. 5, 1993.

Appeal from the United States District Court for the Southern District of Texas.

Before WISDOM, JOLLY, and JONES, Circuit Judges.

WISDOM, Circuit Judge:

In this case, we revisit a tireless litigant, impressive in her perseverance, if not her track record. Fortunately, this case is nearing a final end and our task today is quite discrete.

To relay the complicated procedural history of this case would require more space than its value warrants. This case originated in a suit filed by the appellant in late 1986. Six years later, after judgment was entered against her, she appealed to this Court in *Frame v. S-H, Inc.* ("*Frame I* ").[1] Although this Court expressed its displeasure with being forced to remand, it stressed that only a narrow issue—one of damages—was left on the agenda.[2] It is only the resolution of that narrow question that we address today.

We find that the district court followed the instructions of this Court upon remand and, accordingly, we affirm.

I. FACTS.

A detailed factual summary of the case appears in the opinion issued after this Court decided

---

[1]967 F.2d 194 (5th Cir.1992).

[2]This Court referred to the proceedings as a "story of gross abuse of discovery procedures tolerated much too long by the trial court." *Frame I,* 967 F.2d at 196.

the first appeal.[3]  For the purposes of this appeal, we need to outline only the basic facts at issue.

This case originated in a suit filed by Suzanne Frame.  Frame sought to recover money from Manuel Zepeda who, she contended, had fraudulently induced her to entrust $7 million with him, ostensibly for the purpose of funding an international perfume industry.  Unfortunately, the money disappeared without the expected returns or profits.

One year after Frame filed suit against Zepeda, the district court entertained a motion to intervene brought by a group of 28 separate investors (the "intervenors").  The intervenors charged that Frame's lawsuit against Zepeda was mere subterfuge for what really happened, namely that Frame, herself, had defrauded the investors out of the money.  The court granted the motion and realigned the parties to reflect the new posture;  Frame became the defendant.[4]

In the midst of these proceedings, Frame filed for bankruptcy protection for her company and herself, personally, in the Southern District of New York.  Her personal bankruptcy petition was transferred to Texas where it was dismissed because of Frame's lack of good faith and other abuses.

In court, Frame engaged in a persistent practice of delaying tactics and other discovery abuses too lengthy to recount here.  These transgressions impelled the harassed district court to describe her as a "disingenuous, obstreperous, obfuscating pain."  Ultimately the court entered a final default judgment against her for over $10.2 million.[5]

Frame appealed the $10.2 million judgment.  In *Frame I,* this Court reluctantly found one issue which required the district court's further attention:  the proper calculation of damages.  In particular, this Court asked the district judge to consider the *Najarro* case which examined these transactions and determined that the Texas usury laws might reduce the damages awarded.

The district court entered its Amended Final Judgment on March 2, 1993.  In addition, the

---

[3]*Id.* at 196-202.

[4]Zepeda and his two business concerns remained separate and distinct defendants.

[5]At the same time, a companion case was brought by other investors who contended that Frame had similarly defrauded them.  Judgment was rendered against Frame and affirmed by this Court in *Najarro v. SASI Int'l,* 904 F.2d 1002 (5th Cir.1990), *cert. denied sub nom., Najarro v. Frame,* 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991).

district court entered an Order Awarding Attorneys' Fees and Expenses on March 25, 1993. It is from these orders that Frame now appeals.

## II. DISCUSSION.

### A. Did the District Court Award Usury Penalties as Instructed by this Court?

Frame contends that the district court did not apply usury penalties as instructed by this Court and that failure to do so constitutes reversible error.

The usury law this Court instructed the district court to consider upon remand is Tex.Rev.Civ.Stat.Ann. art. 5069, § 1.01 *et seq.* That statute states a precise formula for determining the usury set-off penalty. The formula boils down to a forfeit, by the person who received the interest, of three times the amount of the usurious interest.[6] In addition, the party seeking the penalties may recover reasonable attorney fees.[7]

In the present case, the district court followed the Texas statute as instructed by this Court. The district court stated in its Amended Final Judgment:

> From the total damages is subtracted $501,760.00 which represents contemplated usury charges of $161,420.00, tripled, plus $17,500.00 in attorney's fees. The offset is pro-rated against each individual award.

Hence, on its face, the district court applied the proper usury penalties.

It is true that the district court judge expressed a desire to avoid applying the usury penalties on the grounds that usury is not a valid counterclaim when one sues on a note that is void by reason of common law fraud.[8] In spite of that remark, the court applied the usury penalties as stated above. Despite Frame's charge to the contrary, the district court followed this Court's instructions upon remand.

### B. Did the district court Err in Awarding Punitive Damages Under Common Law Fraud without Conducting A Hearing?

The appellant contends that the district court committed error when the district court elected

---

[6]Tex.Rev.Civ.Stat.Ann. art. 5069, § 1.06. The statute defines usurious interest as the total interest charged that exceeds the amount of interest that could have been charged legally. *Id.*

[7]*Id.*

[8]R. 618, p. 26.

to calculate damages without the benefit of an evidentiary hearing. We review this determination under an abuse of discretion standard.[9]

As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing.[10] That rule, however, is subject to an exception where the amount claimed is a liquidated sum or one capable of mathematical calculation.[11]

The Federal Rules of Civil Procedure, contrary to the reading the appellant would ascribe, does not require an evidentiary hearing. Fed.R.Civ.P. 55(b)(2) (default judgment rule) reads, in pertinent part:

> If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references *as it deems necessary and proper....* (Emphasis added).

The rule explicitly grants the district court wide latitude; the appellate court, in review, should defer to that discretion.

A default judgment typically arises early in the proceedings, often when the court has received little substantive evidence. We are not presented with that problem here. To the contrary, plentiful evidence on defendant's conduct has been received. The district judge, himself, has maintained a long and close familiarity with the issues in this matter. We cannot say in this case that this evidence was insufficient to allow a district court, in its measured discretion, to forego an evidentiary hearing.

The case of *Action S.A. v. Marc Rich & Co., Inc.*[12] resolved a like issue with similar reasoning. In that case, the U.S. Court of Appeals for the Second Circuit upheld a district court's

---

[9]*HMG Property Investors v. Parque Indus. Rio Canas,* 847 F.2d 908 (1st Cir.1988). *See generally,* 10 C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 2693 at 472-74 (2d ed. 1983).

[10]*See United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir.1979).

[11]*Id.; see also, Flaks v. Koegel,* 504 F.2d 702, 707-09 (2d Cir.1974).

[12]951 F.2d 504 (2nd Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 1763, 118 L.Ed.2d 425 (1992).

determination of damages without an evidentiary hearing.[13]  The district court judge similarly had denied the request for an evidentiary hearing and expressed his displeasure with what he perceived as delaying tactics by counsel.

On appeal, the court determined that the judge permissibly relied on "detailed affidavits and documentary evidence, supplemented by the district court Judge's personal knowledge of the record, gained during four years of involvement with the litigation."[14]  Similarly, in *HMG Property Investors*[15], the court deferred to the district judge on a Rule 55(b) decision in the light of his "years of travail" and intimate familiarity with the case.

The case at hand presents a paradigm of what the *Action S.A.* court termed "the long and tortuous history of these proceedings."[16]  This case has literally dragged on for years, prompting this Court, in its last meeting with these litigants, to express its exasperation:  "It is unfortunate that we cannot put this litigation, which has lingered in the courts for seven years, to a swift end."[17]  The district court was familiar with the twists and turns of these proceedings.

On the specific issue of punitive damages, the *Action S.A.* court again deferred to the district judge:  "[The district judge] was in the best position to determine whether or not the award of punitive damages was an appropriate remedy."[18]  That deference is equally appropriate in the case at hand.  The court explicitly made its findings on the basis of an ample record.[19]  After seven years

---

[13]*Id.* at 508-09.

[14]*Id.* at 508 (quoting *Fustok v. ContiCommodity Services, Inc.,* 873 F.2d 38, 40 (2d Cir.1989)).

[15]847 F.2d at 919.

[16]*Action S.A.,* 951 F.2d at 508.

[17]*Frame I,* 967 F.2d at 196.

[18]*Action S.A.,* 951 F.2d at 509.

[19]The court stated:

> I also find that the record amply supports the finding that Ms. Frame routinely and deliberately misrepresented present material facts ... with a reckless disregard for whether they were true.

of trying a case, a district court judge should be trusted when he elects not to seek more evidence on matters with which he is already familiar.

## C. Did the District Court Judge Err When He Awarded Additional Collection Fees and Attorney Fees?

The appellant charges that the district court failed to conduct a necessary evidentiary hearing before awarding the Appellees additional collection fees and attorney fees.[20] As detailed above, Fed.R.Civ.P. 55(b) does not mandate an evidentiary hearing but, rather, gives the judge wide latitude in determining whether such a hearing will be beneficial.

An evidentiary hearing would have revealed no pertinent information on the collection fees.[21] The damages on the notes at issue totaled $2,504,510.00. The terms of the notes allow for 107 of the principal to go to collection fees in the event of a default on the notes. Hence, the district court awarded the intervenors $250,451. The fees could be "computed with certainty by reference to the pleadings and supporting documents alone," rendering an evidentiary hearing unnecessary.[22]

The appellant also charges that the district court committed reversible error when it awarded additional attorney fees. Her argument is similar to those already addressed: she contends that the district court was required to hold a separate hearing on the question. The attorney fees at issue, however, were not unliquidated damages. Instead, the record shows that detailed billing records substantiated the district court's award.

Again, where the evidence before the court allows it to make findings based upon that

---

The investors reasonably relied on those representations of material present facts and promises of performance in the future, and that reliance caused them damage, it caused them damage in the loss of their legally recoverable principal, and because it was done in a calculated deliberate scheme, and because every turn in the investors attempt to recover their investment has been met with what could only be generously characterized as an obstruction of justice, there is the predicate at law for the awarding of punitive damages.

[20]Pursuant to the district court's amended final judgment, the intervenors received a total of $525,000.00 in attorney fees and $250,451 in collection fees.

[21]Even the appellant appears to concede this point and does not press the need for a hearing beyond her misinformed contention that formalities require it.

[22]*Frame I,* 967 F.2d at 204.

evidence, the court need not jump through the hoop of an evidentiary hearing.[23]  In the case at hand, the district court judge asked both sides to react to the proposals of the other on the issue of attorney fees.  Both parties had input, even in the absence of a formal hearing.  Where a district court has made a reasonable determination that an additional hearing would be superfluous, we will defer.

## III. CONCLUSION

For the foregoing reasons, the district court judgment is AFFIRMED.

---

[23]*See Fustok,* 873 F.2d at 40.