# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 10-6043

---

In re:                                          *
                                                *
Nathan Paul Reuter,                             *
                                                *
        Debtor.                                 *
                                                *
                                                *
Nathan Paul Reuter,                             *
                                                *
        Debtor - Appellant.                     *
                                                *  Appeal from the United States
        v.                                      *  Bankruptcy Court for the
                                                *  Western District of Missouri
Tana S. Cutcliff; James A. Fields;              *
James D. Fields; Joshua P. Haeflinger;          *
LaDonna S. Henderson, as Trustee for            *
LaDonna S. Henderson Living Trust;              *
Patricia A. Reitz, as Trustee for Frances       *
L. Reitz Trust; Terry J. Schippers; James       *
D. Teegarden II; Michael S. Trom,               *
                                                *
        Movants - Appellees.                    *
                                                *

---

No. 10-6069

---

In re:                                          *
                                                *
Nathan Paul Reuter,                             *
                                                *

|                                            |     |                              |
|--------------------------------------------|-----|------------------------------|
| Debtor.                                    | *   |                              |
|                                            | *   |                              |
|                                            | *   |                              |
| Tana S. Cutcliff; James A. Fields;         | *   |                              |
| James D. Fields; Joshua P. Haeflinger;     | *   |                              |
| LaDonna S. Henderson, as Trustee for       | *   |                              |
| LaDonna S. Henderson Living Trust;         | *   | Appeal from the United States |
| Patricia A. Reitz, as Trustee for Frances  | *   | Bankruptcy Court for the     |
| L. Reitz Trust; Terry J. Schippers; James  | *   | Western District of Missouri |
| D. Teegarden II; Michael S. Trom,          | *   |                              |
|                                            | *   |                              |
| Plaintiffs - Appellees.                    | *   |                              |
|                                            | *   |                              |
| v.                                         | *   |                              |
|                                            | *   |                              |
| Nathan Paul Reuter,                        | *   |                              |
|                                            | *   |                              |
| Defendant - Appellant.                     | *   |                              |
|                                            | *   |                              |

Submitted: January 11, 2011
Filed: January 31, 2011

Before KRESSEL, Chief Judge, SALADINO, and NAIL, Bankruptcy Judges.

SALADINO, Bankruptcy Judge.

The debtor appeals from orders of the bankruptcy court[1] denying confirmation of his Chapter 11 plan, granting the creditors' motion to convert the case to Chapter

---

[1]The Honorable Dennis R. Dow, United States Bankruptcy Judge for the Western District of Missouri.

7, and entering judgment in favor of the creditors on certain dischargeability claims raised in an adversary proceeding. For the reasons stated below, we affirm.

## I. Background

Mr. Reuter, the debtor, was a founding member of Vertical Group, LLC, a financial services company in Columbia, Missouri. The company handled mortgages, insurance, and investments. Mr. Reuter's expertise was in mortgages, but he induced clients, including the appellees here, to invest funds through the company in late 2004 and early 2005. The investments did not go well – evidently, all of the investors lost their investments.[2] In May 2005, the State of Missouri filed a civil suit against Vertical Group, LLC, and its officers, members, and/or directors, including Mr. Reuter, for, *inter alia*, selling unregistered securities and misrepresenting the nature of certain financial instruments they sold to investors other than the Cutcliff group of creditors (however, there is one investor common to both groups). Mr. Reuter entered into a

---

[2]Here is a succinct description of the investment scheme, from the bankruptcy court's opinion:

> [T]he Plaintiffs were induced to transfer money into an escrow account. The[y] were told that they were participating in an exclusive, high-yield, investment program, where their principal investment would be 100% safe, and they would start receiving returns in as early as fourteen to thirty days after they invested. The specifics related to how their investments were suppose[d] to remain in the escrow account and create such fantastic returns are obtuse, however, the evidence is essentially that Plaintiffs thought their principal investment was going to be leveraged against, or be used to acquire, standby letters of credit, which would somehow generate the incredible returns. The fact is, however, that because [certain individuals affiliated with Vertical other than Mr. Reuter] were criminals, Plaintiffs never received their principal investment back or a single penny of the promised returns.

Mem. Op. of Apr. 14, 2010, at 5-6.

consent judgment with the Missouri Attorney General in September 2008, permanently enjoining him from selling, attempting to sell, or acting as an agent or advisor regarding the sale of investments, securities, or financial instruments, and assessing a civil penalty of $10,000.00 against him, with payment of $5,000.00 of that penalty suspended. One of the company's principals – Daryl Brown – was convicted in federal court in 2008 of seven counts of wire fraud, two counts of causing interstate travel in execution of a scheme to defraud, three counts of engaging in monetary transactions in criminally derived property, and one count of conspiracy to commit money laundering, all of which garnered him a sentence of 180 months in prison.

In June 2006, Ms. Cutcliff and a number of other Vertical clients filed a civil suit in federal court in the Western District of Missouri against Mr. Reuter and Vertical Group, LLC, alleging violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), conspiracy, violation of the Federal Securities Act, violation of the Missouri Securities Act, breach of fiduciary duty, violation of the Missouri Merchandising Practices Act, and fraudulent inducement. In July 2007, Mr. Reuter filed a Chapter 11 bankruptcy petition, which stayed the civil lawsuit. In his bankruptcy schedules, he listed the plaintiffs as holding contingent, unliquidated, and disputed claims totaling more than $2.9 million. Ms. Cutcliff and the eight other plaintiffs then filed an adversary proceeding alleging that Mr. Reuter operated a Ponzi scheme, objecting to dischargeability under 11 U.S.C. §§ 523(a)(2), (a)(4), (a)(6), and (a)(19) and objecting to discharge under 11 U.S.C. §§ 727(a)(3), (a)(4), and (a)(5).[3]

Because many of the issues in the adversary proceeding were similar to the same group of aggrieved investors' objection to the debtor's plan, both matters were

---

[3]The bankruptcy court deemed the claims under § 523(a)(4), RICO, the Missouri Merchandising Practices Act, and the Federal Securities Act to be abandoned, and declined to rule on the § 523(a)(6) claim because it would provide no additional benefit to the creditors. This portion of the ruling is not at issue in this appeal.

tried simultaneously. In March 2010, the Cutcliff group of creditors moved to convert the case to a Chapter 7. In April 2010, the court issued an opinion denying confirmation of the plan and entering judgment in the creditors' favor regarding the non-dischargeability of the debts under §§ 523(a)(2)(A) (false representation and false pretense) and (a)(19) (fraud and securities law violations). In May 2010, the court granted the motion to convert.

A.      The adversary proceeding

In addition to holding the debtor liable under § 523(a)(2)(A) for his own fraud, the court also held him vicariously liable under that section for the fraud of his business associate, Daryl Brown. The court noted an open question with regard to the Eighth Circuit's legal interpretation of attributing vicarious liability to an otherwise innocent partner and whether a creditor has to show more than the mere existence of an agent-principal relationship before the agent's fraud may be imputed to the debtor-principal, but ruled that under the evidence presented by the creditors, at a minimum the debtor and Mr. Brown acted as partners and the debtor could be held liable for Mr. Brown's fraud. Moreover, the court ruled that the debtor willfully ignored the myriad warning signs about Mr. Brown and his activities and either knew or should have known of Mr. Brown's fraud.

In considering the § 523(a)(19) cause of action, the court recognized divergent opinions as to the import of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act amendments to § 523(a)(19) and whether a bankruptcy court has jurisdiction to render a determination of liability for securities law violations or whether the court may only decide the dischargeability of a liability determination made in a non-bankruptcy forum. The court ruled in this case that Mr. Reuter had consented to the bankruptcy court's jurisdiction to determine liability as well as dischargeability on the basis of the consent judgment he executed with the Missouri Attorney General during the pendency of the bankruptcy case, which specifically

5

stated that the creditors' claims for monetary relief would be fully determined and adjudicated by the bankruptcy court.

The court then found that the debtor was subject to a private cause of action by the creditors under the Missouri Securities Act of 2003 and was liable for his direct violations of securities law, although he was not subject to liability under the federal Securities Exchange Act of 1934 as a "controlling person" for the securities violations of others.

The court performed its damages calculations under two separate measures of damages: common law damages stemming from the debtor's "direct and vicarious fraudulent representations and false pretenses," and statutory damages for his securities violations under the Missouri statutory code. The amount of actual damages was the principal amount of each plaintiff's investment. That also was the amount of the statutory damages. No consequential damages were awarded. The court awarded punitive damages based on "egregious" evidence of the debtor's recklessness and indifference to the creditors. The court adopted the debtor's calculation of double the actual damages, as used in his plan, for the appropriate amount of punitive damages.

The court also awarded attorneys' fees to the five creditors who were found to hold valid claims for the debtor's violation of Missouri securities laws.

B.     Denial of plan confirmation

In his plan, Mr. Reuter proposed to liquidate his partial ownership/stock interests in three title companies and pay the net proceeds to the Cutcliff group of creditors *pro rata* in full payment and satisfaction of their claims, plus make 60 monthly payments to them which "would be equal to the difference of all other property to be distributed under the Plan to the holders of claims and Debtor's projected disposable income." The Cutcliff creditors objected to the plan on the

grounds that it was not proposed in good faith under 11 U.S.C. § 1129(a)(3), it was not feasible under 11 U.S.C. § 1129(a)(11), and it was not in the best interest of creditors under 11 U.S.C. § 1129(a)(7).

The court held that bad faith was evident from the totality of the circumstances of the case: namely, that a larger purpose for the debtor's bankruptcy filing was to lessen the effects of the Cutcliff group's litigation rather than to reorganize his financially troubled business enterprises. Moreover, he had no debt other than the Cutcliff group's claims, he failed to report the value of certain assets and a particular source of income, and he appeared to the court to be purposely under-employed. The court also surmised that, prior to filing bankruptcy, he structured all of his assets to shield them from creditors. In finding a lack of good faith, the court said,

> [T]he Debtor's admitted motivation for seeking chapter 11 relief suggests that his Plan was proposed not with the intention of satisfying Plaintiffs' claims to the greatest extent possible, but with the intention of avoiding payment of those claims to the greatest extent possible, and the meager repayment percentage proposed by the Debtor's plan supports this conclusion. Such a purpose is the antithesis of good faith and not consistent with the spirit and purpose of Chapter 11.

Mem. Op. of Apr. 14, 2010, at 67.

In addition to bad faith, the court found the plan lacked feasibility. Mr. Reuter expected to have disposable income of $100.00 each month, which was insufficient to cover his proposed payment of the Missouri Attorney General's fine, much less any administrative expenses of the case or any of the Cutcliff creditors' claims.

The issue on the best interest of creditors test was whether the debtor's assets, which were held in revocable trusts owned by him and his wife and which the debtor

7

claims were held by the couple as tenants by the entirety, would be available to creditors in a Chapter 7 liquidation. The court determined that the Reuters' creation of and transfer of their property into the trusts necessarily severed their tenancy by the entirety, so the property was not exempt. Therefore, his plan, which did not account for this property, was not in the best interest of creditors.

At a subsequent hearing on the Cutcliff motion to convert or dismiss, Mr. Reuter did not oppose conversion to Chapter 7. The court agreed that conversion was preferable to dismissal because the debtor had assets to be administered and liquidated, and because a trustee would be in a position to investigate the trust property and determine whether or not it was exempt and what its value for the estate might be. A trustee would also be able to pursue possible fraudulent or preferential transfers.

## II. Appellant's position

Mr. Reuter purports to raise four issues on appeal:

1. The bankruptcy court erred in recognizing claims of "false pretenses" and/or "false representation" as distinct, nominate "torts" arising under 11 U.S.C. § 523(a)(2)(A) or "federal common law," independent of the Missouri law of fraud; in declaring that the Cutcliff plaintiffs were the holders of liquidated, allowable and non-dischargeable claims against Mr. Reuter under or upon such newly-created "torts"; and in finding that Mr. Reuter's plan had been proposed in bad faith, was infeasible or was contrary to the "best interests" of the Cutcliff plaintiffs as the holders of such claims;

2. The bankruptcy court erred in holding that Mr. Reuter had "sold unregistered securities" in violation of the Missouri Securities Act of 2003, notwithstanding the failure of the Cutcliff plaintiffs to prove such claims; in creating a new private right

8

of action under the Missouri securities act; in declaring that the Cutcliff plaintiffs were the holders on that basis of allowable and non-dischargeable claims for damages against Mr. Reuter and in determining that Mr. Reuter's plan had been proposed in bad faith, that it was infeasible and that it was contrary to the "best interests" of the Cutcliff plaintiffs as the holders of such claims;

3. The bankruptcy court erred in denying confirmation of Mr. Reuter's plan and converting his case to liquidation under Chapter 7 on the grounds that the Cutcliff plaintiffs were the holders of liquidated, allowable and non-dischargeable claims against Mr. Reuter resulting from frauds practiced and/or securities violations committed by Mr. Reuter's alleged "partner," Daryl M. Brown, and that Mr. Reuter's plan had, as to the Cutcliff plaintiffs, been proposed in bad faith, was infeasible or was contrary to their best interests; and

4. The bankruptcy court erred in holding that all or some portion of the assets of the Kathleen S. Reuter Revocable Trust should be included in Mr. Reuter's plan and Mr. Reuter's failure to so include them supported a finding that his plan had been proposed in bad faith, that his plan was infeasible and/or that his plan was not in the "best interests" of the Cutcliff plaintiffs.

III.   Standard of review

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *First Nat'l Bank of Olathe v. Pontow (In re Pontow)*, 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan)*, 108 F.3d 886, 888 (8th Cir. 1997); Fed. R. Bankr. P. 8013. The bankruptcy court's interpretation of state law is reviewed de novo. *CIT Group/Equip. Fin., Inc. (In re M & S Grading, Inc.)*, 457 F.3d 898, 899 (8th Cir. 2006). The bankruptcy court's factual findings regarding feasibility and bad faith in connection with plan confirmation are reviewed for clear

9

error. *Northwest Village Ltd. P'ship v. Franke (In re Westpointe, L.P.)*, 241 F.3d 1005, 1007 (8th Cir. 2001).

The determination of whether a requisite element of a claim under § 523(a)(2) is present is a factual finding. *Lindau v. Nelson (In re Nelson)*, 357 B.R. 508, 512 (B.A.P. 8th Cir. 2006); *Merchants Nat'l Bank of Winona v. Moen (In re Moen)*, 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999). The bankruptcy court's findings of fact will not be set aside unless those findings are clearly erroneous. Fed. R. Bankr. P. 8013. A finding is clearly erroneous if, after examining the entire record, we are left with a definite and firm conviction that the bankruptcy court has made a mistake. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). Also, when reviewing the evidentiary record, we will give due deference to the bankruptcy court's opportunity to judge the credibility of witnesses. Fed. R. Bankr. P. 8013.

## IV.  Discussion

With regard to the first issue, the debtor argues that because the creditors did not file proofs of claim and therefore were not subject to the presumption of having a valid claim, they should have engaged in a two-step process of first proving up their claims and then proving the non-dischargeability of those claims. In response, the creditors assert that Mr. Reuter conceded the claims to be both liquidated and allowed by providing for them in his plan. The debtor's plan classified each of the nine creditors involved in this case separately, referring to each individual's "unliquidated and disputed claim" in a "potentially allowable amount." The plan then deemed each class of claims to be liquidated and allowed in specified amounts. It proposed to sell Mr. Reuter's assets – his fractional ownership interests in three entities – and pay the claims *pro rata*. A later section of the plan recognized the debtor's obligation to pay restitution to these creditors according to the terms of the plan. The creditors argue that Mr. Reuter is raising the issue of claim allowance for the first time now, having seemingly acquiesced in the issue by not raising it at trial or in post-trial briefing.

10

It is clear from the debtor's plan language that he conceded the validity of the claims, so it was unnecessary for the bankruptcy court to devote its resources to determining whether liability had been established before determining the non-dischargeability of the debts.

The debtor further argues that the bankruptcy court improperly considered the "false representation" and "false pretenses" aspects of § 523(a)(2)(A) when the creditors alleged only actual fraud. He specifically references the bankruptcy court's response to his assertion that the Eighth Circuit Court of Appeals' decision in *Sindecuse v. Katsaros*, 541 F.3d 801 (8th Cir. 2008), requires the creditors to prove under Missouri law that the debtor made a misrepresentation about a past or existing fact, but the proof cannot be predicated upon a statement regarding what an independent third party would or would not do. Mr. Reuter argues that the creditors attempted to do just that, basing their claims on how a so-called escrow agent was to handle their investment funds. The bankruptcy court distinguished the *Sindecuse* opinion, describing how the creditors asserted claims under the false pretenses and false representations prongs of § 523(a)(2)(A) and noting that the creditors' claims were based on what Mr. Reuter told them about how the money was going to be handled, not on any statements by the escrow agent or any other third party. This is neither clear error nor an incorrect legal conclusion.

The debtor also argues that the bankruptcy court somehow enlarged the scope of the known jurisprudence with "an unprecedented interpretation of § 523(a)(2)(A)" by creating "new and independent 'causes of action' for the establishment/liquidation of 'tort' claims based upon 'false pretenses' and/or 'false representation,' independent of non-bankruptcy law." The United States Supreme Court has made clear that the terms of § 523(a)(2)(A) "incorporate the general common law of torts, the dominant consensus of common-law jurisdiction, rather than the law of any particular State," *Field v. Mans*, 516 U.S. 59, 70 n.9 (1995), so it is unclear how the bankruptcy court expanded the existing applicability of the statute. Moreover, the creditors' brief on

11

appeal cites to numerous Missouri cases recognizing the common-law torts of false pretenses and false representation as forms of fraud.

The same legal authority applies to Mr. Reuter's corollary argument that the creditors failed to establish every element of a fraud action under Missouri law. A finding of non-dischargeability under § 523(a)(2)(A) is not premised on state law, so the creditors here need not have met the requirements of proving fraud in Missouri.

The debtor also argues that the bankruptcy court improperly inferred fraudulent intent on the part of the debtor, in contravention of Missouri law. However, the bankruptcy court followed established law within the Eighth Circuit regarding the intent element of false representation and permitting the use of circumstantial evidence to draw the inference that a debtor intended to deceive another. *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287 (8th Cir. 1987); *Merchants Nat'l Bank v. Moen (In re Moen)*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999). The record contains abundant circumstantial evidence from which intent can be inferred, particularly from Mr. Reuter's numerous statements to the creditors, either to induce them to invest or to keep them from going to authorities once they realized their "investment" had disappeared, regarding matters that he either knew or should have known – had he not willfully or recklessly ignored the evidence to the contrary – were false.

The debtor also argues that the creditors could not reasonably have relied on his statements under Missouri law. Once again, the bankruptcy court properly stated the law of justifiable reliance – the lesser standard of reliance which the United States Supreme Court has declared applicable to false representations under § 523(a)(2)(A) – and found that the creditors had met that standard. *Field v. Mans*, 516 U.S. 59 (1995).

12

With regard to the second issue, the debtor argues that the bankruptcy court erroneously held that he had violated Missouri securities laws because the creditors had not established each element required. He specifically argues that there was no evidence before the court that the "unregistered securities" he was found to have sold or offered for sale in violation of the Missouri Securities Act were in fact unregistered. This argument appears to be raised for the first time on appeal, as the debtor admitted in testimony and conceded in his post-trial brief that the securities were unregistered. "Ordinarily, we do not consider an argument raised for the first time on appeal. We consider a newly raised argument only if it is purely legal and requires no additional factual development, or if a manifest injustice would otherwise result." *Duncan v. LaBarge (In re Duncan)*, 418 B.R. 278, 282 (B.A.P. 8th Cir. 2009) (quoting *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 725 (8th Cir. 2002)). Neither of those circumstances exists here.

He further argues that the sections of the Missouri Securities Act upon which the bankruptcy court relied are applicable only to criminal enforcement, not private rights of action, and he asserts that the section of the Act which does create a private right of action does so only against actual sellers of investments or against investment advisors who are compensated for their advice, neither of which apply to him. He further argues that the Missouri Securities Act does not support the court's imposition of vicarious liability against him.

The statute at issue, Mo. Rev. Stat. § 409.5-509,[4] is a portion of the Missouri Securities Act of 2003. It permits a purchaser of securities to bring a private cause of action against the seller if the seller sold the securities in violation of § 409.3-301[5] of the Missouri Securities Act of 2003.

The bankruptcy court ruled that Mr. Reuter is liable for statutory securities fraud under Mo. Rev. Stat. § 409.5-509(b) because (1) the plaintiffs established that the contracts they executed were "investment contracts" under Missouri case law and

---

[4]In pertinent part, that statute is as follows:

409.5-509. Liabilities – violations – damages – remedies
    . . .
    (b) A person is liable to the purchaser if the person sells a security in violation of section 409.3-301 or, by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statement made, in light of the circumstances under which it is made, not misleading, the purchaser not knowing the untruth or omission and the seller not sustaining the burden of proof that the seller did not know and, in the exercise of reasonable care, could not have known of the untruth or omission. . . .

[5]    409.3-301. Registration requirement – securities
    It is unlawful for a person to offer or sell a security in this state unless:
            (1) The security is a federal covered security;
            (2) The security, transaction, or offer is exempted from registration under sections 409.2-201 to 409.2-203; or
            (3) The security is registered under this act.

In the context of the Securities Act, "sale" includes every contract of sale, contract to sell, or disposition of, a security or interest in a security for value, and "offer to sell" includes every attempt or offer to dispose of, or solicitation of an offer to purchase, a security or interest in a security for value. Mo. Rev. Stat. § 409.1-102(26).

should have been, but were not, registered with the Missouri Securities Commission; and (2) Mr. Reuter "sold" and "offered to sell" securities – specifically, investment contracts – under the expansive interpretations traditionally given to those terms in the federal and Missouri securities acts, by personally soliciting the plaintiffs to invest, by serving as the primary sales contact for some of the plaintiffs, and by advocating the purportedly tremendous returns to be made on these investments. These state-law securities violations rendered the debts associated with the violations non-dischargeable under § 523(a)(19).

On appeal, Mr. Reuter argues that he did not "actually sell" securities because Mr. Brown and other entities through which the investment transactions were handled were the "actual sellers" of the security instruments. The bankruptcy court found ample evidence that Mr. Reuter "sold" or "offered to sell" the investments, in violation of § 409.5-509(b).[6] This court reviews the bankruptcy court's interpretation

---

[6]As the bankruptcy court explained:

> The record supports the Court's finding that Debtor "sold" and "offered to sell" the investment contract to Trom, Henderson, J. Fields, T. Fields and Reitz. Debtor specifically solicited these Plaintiffs to invest their money in the investment opportunity that he, Brown and Williams were promoting. Debtor offered numerous assurances and explanations to quell any apprehension they may have had. Debtor did much more than simply announce an opportunity about some arbitrary investment program. Bowman testified that Debtor was personally involved in the sales of investments, that he was likely the main sales contact for Trom and Henderson, and that for the two Fields and Reitz, he sat in on the meeting at Vertical's office, answered questions and explained the program. He was described as the "closer." Debtor was not sitting on the side-lines while the investments were being sold through his company, he was a key player. Bowman testified convincingly that Debtor's day-to-day work at Vertical involved working the investment side of the shop with Williams. He may not have sold mutual funds, or stocks, but

(continued...)

15

of state law de novo and its factual findings for clear error. We do not find the factual findings to be erroneous, nor do we find the bankruptcy court's legal interpretation to be incorrect.

Contrary to the debtor's argument, the court imposed vicarious liability only under § 523(a)(2)(A), not under the Missouri Securities Act, so that portion of his argument is inapplicable here.

With regard to the third appellate issue, the debtor appears to be challenging the bankruptcy court's holding that debtor is vicariously liable under § 523(a)(2)(A) for the fraud of Mr. Brown.[7] Debtor argues that he cannot be vicariously liable for Mr. Brown's fraudulent conduct because they did not have a formal partnership under Missouri law. However, the Supreme Court and Eighth Circuit cases discussing vicarious liability in this context do not require the formalities of a state law business partnership for the liability of one to be imposed on the other. In fact, common law agency principles are discussed as being sufficient to support the imputation of fraud from one to another. *See, Strang v. Bradner*, 114 U.S. 555, 561 (1885); *Owens v. Miller (In re Miller)*, 276 F.3d 424, 429 (8th Cir. 2002); *Walker v. Citizens Bank of Maryville, Mo. (In re Walker)*, 726 F. 2d 452, 454 (8th Cir. 1984). The bankruptcy court cited numerous examples of Mr. Reuter acting on behalf of Mr. Brown in

[6](...continued)
there is ample evidence in the record to support the Court's finding that he sold investment contracts. . . . There is competent and substantial evidence in the record to support the Court's finding that Debtor "offered to sell" and "sold" "investments contracts" to Henderson, J. Fields, T. Fields, and Reitz, which were not registered.

Mem. Op. of Apr. 14, 2010, at 50-51.

[7]The bankruptcy court's vicarious liability holding affects only four of the plaintiffs (Cutliff, Haeflinger, Teegarden and Schippers) since the court found direct liability under § 523(a)(2) as to the remaining plaintiffs.

finding that a sufficient business partnership arrangement existed and that Mr. Reuter should be liable for Mr. Brown's fraud:

> [T]here is ample evidence to support the Court's finding that Debtor and Brown conducted themselves as though they were partners. The most persuasive evidence of Debtor's intent to form a partnership with Brown is his own admission in the Petition for Damages which he filed against Brown in Circuit Court of Boone County, Missouri. In that petition, Debtor describes the way in which Brown's fraudulent misrepresentations induced Debtor into entering into the "partnership agreement" whereby Debtor agreed to allow Brown to acquire a 32.5% ownership interest in Vertical and to make payments to certain of Brown's associates in exchange for acquisition of a 50% ownership interest in the alleged Trust. Debtor testified that they had an oral agreement to combine a portion of Debtor's company and some of his money with Brown's alleged Trust and their combined experience in the financial services industry. According to Debtor, the plan was for Debtor to manage the mortgage side of Vertical and for Brown to manage the investments. Debtor believed that Vertical would be able to make money off of the Trust, which Brown alleged existed and alleged he had rights to use as part of his investment plan. Debtor described the business at Vertical as "a group of, you know, guys that were, you know, acted as partners and worked together." Bowman testified that the relationship between Brown and Debtor was a partnership. Brown brought to the partnership his relationship with the alleged big hitter in the wealth management industry, Al Christy, and his Trust and all of his self-reported investment expertise and Debtor brought a legitimate company, and "a gentleman [Debtor] that had the money to back it up." Bowman explained that because Debtor was financially stable, he was going to fund the operations until Brown could get the investments up and running. The record is replete with examples of the manner

17

in which Brown and Debtor held themselves out as partners and the Court finds any testimony from Debtor to the contrary unpersuasive.

Mem. Op. of Apr. 14, 2010, at 40-41. These factual findings are not clearly erroneous.

The debtor also cites *Treadwell v. Glenstone Lodge, Inc. (In re Treadwell)*, 423 B.R. 309 (B.A.P. 8th Cir. 2010), in support of his argument that because he was not active as a "partner" in the business, he cannot be held responsible for Mr. Brown's conduct. As shown above, the facts simply do not support that argument. The bankruptcy court found that debtor willfully ignored the warning signs about Mr. Brown and either knew or should have known of Mr. Brown's fraud. Also, while we ruled that Mr. Treadwell was not liable for his wife's non-dischargeable debt, even though he was ostensibly a partner in her travel agency which incurred the debt, the holding was based on Mr. Treadwell's non-participation in the fraud. Mr. Treadwell's ownership interest in the business was only a marital interest. He did not participate in any manner in the business or its financial arrangements, nor did he have any authority to do so. On that basis alone, the present case is distinguishable from *Treadwell*.

With regard to the fourth appellate issue, Mr. Reuter asserts that the bankruptcy court erroneously held that the tenancy by the entirety had been severed as to the assets held in trust by the debtor and his wife. He also argues that the trust provisions exclude it from property of the bankruptcy estate. Nevertheless, it appears from documents subsequently filed in the bankruptcy case in connection with the Chapter 7 trustee's objection to exemptions that Mr. Reuter transferred ownership of all of the trust property to his wife, which renders his argument here moot because the entireties tenancy no longer exists.

Other than raising the issues in his statement of issues on appeal, none of the debtor's arguments on appeal appear to go to the merits of the denial of confirmation

18

of the plan or the conversion of the case, so those issues are considered to be abandoned.

## V.  Conclusion

The debtor's arguments for reversal of the bankruptcy court's orders are unsupported by the law and the facts and are insufficient to establish legal or factual error by the bankruptcy court. The decisions of the bankruptcy court are affirmed.

_____