# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1429

_____

Tana S. Cutcliff; James A. Fields; Joshua P. Haeflinger; LaDonna S. Henderson,
(as Trustee for LaDonna S. Henderson Living Trust); Patricia A. Reitz, (as Trustee
for Frances L. Reitz Trust); Terry J. Schippers; James D. Teegarden, II; Michael S.
Trom; James D. Fields

*Plaintiffs - Appellees*

v.

Nathan Paul Reuter; Vertical Group, LLC

*Defendant*s

Kathleen Reuter

*Intervenor - Appellant*

_____

No. 14-1730

_____

Tana S. Cutcliff; James A. Fields; Joshua P. Haeflinger; LaDonna S. Henderson,
(as Trustee for LaDonna S. Henderson Living Trust); Patricia A. Reitz, (as Trustee
for Frances L. Reitz Trust); Terry J. Schippers; James D. Teegarden, II; Michael S.
Trom; James D. Fields

*Plaintiffs - Appellees*

v.

Nathan Paul Reuter

*Defendant - Appellant*

Vertical Group, LLC

*Defendant*

Kathleen Reuter

*Intervenor*

————————

Appeals from United States District Court
for the Western District of Missouri - Jefferson City

————————

Submitted: January 15, 2015
Filed: June 30, 2015

————————

Before LOKEN, MELLOY, and GRUENDER, Circuit Judges.

————————

GRUENDER, Circuit Judge.

Nathan and Kathleen Reuter each appeal from the district court's[1] entry of a default judgment that awards damages against Vertical Group, LLC. We dismiss Nathan's appeal for lack of standing and affirm the district court's judgment as to Kathleen's appeal.

———————————

[1]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri, adopting the report and recommendations of the Honorable Dennis R. Dow, United States Bankruptcy Judge for the Western District of Missouri.

## I.       Background

This is the second time we have considered a matter involving Nathan Reuter and a scheme where victims were "lure[d]" into making a "high-yield, zero-risk investment" from which their money was "appropriated." *Reuter v. Cutcliff* (*In re Reuter*), 686 F.3d 511, 513-14 (8th Cir. 2012). Nine of these victims ("the plaintiffs") brought this lawsuit against Nathan and Vertical Group, LLC ("Vertical Group") based on their alleged roles in perpetrating this scheme. Our initial appeal dealt with claims that the plaintiffs also asserted as creditors in Nathan's ensuing bankruptcy. *Id.* This appeal concerns the plaintiffs' original lawsuit against Vertical Group.

Vertical Group failed to defend against this action. The district court thus granted, and the clerk entered, an order of default. The court did not award damages at that time. Shortly thereafter, Nathan filed for Chapter 11 bankruptcy, and the district court statistically closed this matter until Nathan's bankruptcy was resolved.

Nathan proposed a Chapter 11 plan that would settle the plaintiffs' claims against him. The plaintiffs objected to this plan and brought an adversary proceeding against Nathan, incorporating their allegations from the complaint in this case and asserting that their claims against Nathan were non-dischargeable. After holding a trial on these issues, the bankruptcy court found that the plaintiffs' claims against Nathan were non-dischargeable and rejected Nathan's Chapter 11 plan. *Cutcliff v. Reuter* (*In re Reuter*), 427 B.R. 727, 737-38, 779-80 (Bankr. W.D. Mo. 2010), *aff'd*, 443 B.R. 427, 438 (B.A.P. 8th Cir. 2011), *aff'd*, 686 F.3d 511, 520 (8th Cir. 2012). The bankruptcy court awarded actual and punitive damages to the plaintiffs for their claims against Nathan. *Id.* at 766-68, 779. The court also determined that Nathan's bankruptcy estate acquired his interest in the Kathleen S. Reuter Revocable Trust (the "Kathleen Trust"), a trust into which Nathan and his wife, Kathleen Reuter, had transferred assets before his bankruptcy was filed. *Id.* at 768-69, 774-75. At that juncture, the court declined to opine on the "specific value of [Nathan's] interest in

the [property in the trust] or how that value will be realized." *Id.* at 779. The court later converted Nathan's bankruptcy to a Chapter 7 bankruptcy.

The bankruptcy trustee then tried to reach the assets in the Kathleen Trust. The court concluded that Nathan and Kathleen were co-trustees of the trust and that Nathan's powers as a co-trustee were the property of his bankruptcy estate. *Olsen v. Reuter* (*In re Reuter*), 499 B.R. 655, 670-71 (Bankr. W.D. Mo. 2013). However, Nathan lacked "the authority to carry out an action as a trustee under the [Kathleen Trust] without Kathleen's consent," meaning that the rights to which the bankruptcy estate succeeded were "limited to the extent they are subject to Kathleen's consent." *Id.* at 671. The court further concluded that only Kathleen had the power to revoke the trust. *Id.* at 672, 682.

Before this ruling, the plaintiffs also sought to reach the assets in the Kathleen Trust. They reopened this action to determine their damages and "to collect the Vertical Group judgment from the assets of a revocable trust [*i.e.*, the Kathleen Trust] that has been determined to be the property of [Nathan's] bankruptcy estate."[2] The plaintiffs asked the district court to refer this matter to the bankruptcy court. Nathan, who was still a party to this action, opposed this course of action. Kathleen joined the litigation at this point due to her interests with respect to the Kathleen Trust and likewise argued against having the bankruptcy court consider this matter. The district court sided with the plaintiffs and referred this matter to the bankruptcy court.

After receiving affidavits and documentary proof concerning how much money the plaintiffs lost in the investment scheme, but without conducting an evidentiary hearing, the bankruptcy court prepared proposed findings of fact and conclusions of

---

[2]The plaintiffs explained that they intend to reach the assets in the Kathleen Trust by means of a creditor's bill to pursue any assets of Vertical Group that were transferred into the trust.

law in which it recommended awarding actual damages, punitive damages, and attorneys' fees to the plaintiffs. The amount of actual and punitive damages that the court recommended was the same amount that the court had awarded to the plaintiffs in the bankruptcy adversary proceeding against Nathan. Nathan and Kathleen objected to the bankruptcy court's recommendations, and after a *de novo* review, the district court adopted the bankruptcy court's proposed findings of fact and conclusions of law and entered a default judgment against Vertical Group. Nathan and Kathleen each appeal. Vertical Group did not file a notice of appeal.

## II.    Discussion

### A.    Standing to Appeal

We begin with the threshold issue of Nathan's and Kathleen's standing to appeal. "Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333 (1980). Consequently, "a litigant that is a party to the overall *case* may lack standing to appeal from a judgment [concerning] a *claim* to which it was not a party [where] the appellants were not personally aggrieved by the judgment under appeal." *United States v. Northshore Mining Co.*, 576 F.3d 840, 846 (8th Cir. 2009) (alterations in original) (ellipsis omitted) (quoting *City of Cleveland v. Ohio*, 508 F.3d 827, 836 (6th Cir. 2007)). "A party may be aggrieved by a district court decision that adversely affects its legal rights or position vis-a-vis other parties in the case or other potential litigants, but a 'desire for better precedent does not by itself confer standing to appeal.'" *Custer v. Sweeney*, 89 F.3d 1156, 1164 (4th Cir. 1996) (quoting *HCA Health Servs. v. Metro. Life Ins. Co.*, 957 F.2d 120, 124 (4th Cir. 1992)).

In the unique circumstances presented here, Kathleen has standing to appeal due to her interests with respect to the Kathleen Trust. As the bankruptcy court found,

Kathleen is a co-trustee of the trust with the sole power to revoke it. *See* Mo. Rev. Stat. § 456.8-816.24 ("[A] trustee may . . . prosecute or defend an action, claim, or judicial proceeding in any jurisdiction to protect trust property and the trustee in the performance of the trustee's duties."). In the plaintiffs' filings before the district court and this court, they have emphasized that they intend to use this action to reach the assets of the Kathleen Trust. Because of the focused purpose of this action, we are hard pressed to say that Kathleen somehow lacks standing to appeal. *See City of Cleveland*, 508 F.3d at 837 ("We have little trouble concluding that the [appellant] had 'a sufficient stake in the outcome of the controversy' . . . . If it were not for the [appellant], there would be no controversy in this case." (quoting *Bryant v. Yellen*, 447 U.S. 352, 368 (1980))). And the parties seem to agree that the default judgment presents a virtual certainty, rather than a remote possibility, that the plaintiffs will pursue the assets in the Kathleen Trust. *Compare Custer*, 89 F.3d at 1164 (finding standing to appeal where the order "presents a certainty, rather than a mere hypothetical possibility, that [the appealing party] will be forced to incur considerable expense relitigating [a claim in another case]"), *with Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc.*, 32 F.3d 205, 208 (5th Cir. 1994) (explaining that a speculative concern about the eventual result of the district court's judgment does not provide standing to appeal). For these reasons, we conclude that Kathleen has standing to appeal the district court's judgment.

The trust documents also designated Nathan as a co-trustee of the Kathleen Trust. But Nathan does not argue that this fact means that he is aggrieved by the default judgment against Vertical Group. The bankruptcy court has determined that Nathan's powers as a co-trustee became the property of his bankruptcy estate. Because "[t]he [bankruptcy] trustee is the 'legal representative' of the bankrupt estate, with the capacity to sue and be sued," *Vreugdenhil v. Hoekstra*, 773 F.2d 213, 215 (8th Cir. 1985), Nathan does not have standing to appeal on the same basis as Kathleen, *see Longaker v. Boston Scientific Corp.*, 715 F.3d 658, 662 (8th Cir. 2013) ("Because the guaranteed payments, if due at all, are property of the bankruptcy estate, [the debtor]

-6-

lacked standing to assert his breach of contract claim."). Nathan offers no argument to the contrary.

Nathan does argue that he has standing to appeal because he is a member of Vertical Group, a limited liability company. In support of this argument, Nathan cites three Missouri statutory provisions that discuss the powers of a member of a limited liability company and the relationship between a member and a limited liability company. *See* Mo. Rev. Stat. §§ 347.065.1, 347.069.1, 347.171. However, these statutory provisions do not support the notion that Nathan was aggrieved by the district court's judgment merely by virtue of his status as a member of Vertical Group. *Cf. Conway v. Heyl* (*In re Heyl*), 770 F.3d 729, 730 (8th Cir. 2014) (per curiam). We therefore dismiss Nathan's appeal for lack of standing.

## B. Kathleen's Appeal

### 1. "Related to" Jurisdiction

Kathleen contends that the district court erred by referring this matter to the bankruptcy court. Congress has provided that a district court may refer certain proceedings over which it has jurisdiction to a bankruptcy court, including those that are "*related to* a case under title 11" of the United States Code. 28 U.S.C. § 157(a) (emphasis added); *see also id.* § 1334(b) ("[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."). The statute further specifies that "[a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." *Id.* § 157(c)(1). When the bankruptcy court hears such a proceeding, the court is to submit proposed findings of fact and conclusions of law to the district court. *Id.* "[A]ny final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically

-7-

objected." *Id.* Whether a proceeding is "related to" a bankruptcy case is an issue that we review *de novo*. *GAF Holdings, LLC v. Rinaldi (In re Farmland Indus.*), 567 F.3d 1010, 1016-19 (8th Cir. 2009).

A proceeding is "related to" a bankruptcy case if "the outcome of that proceeding could conceivably have any effect on the estate being administered in the bankruptcy." *Speciality Mills, Inc. v. Citizens State Bank*, 51 F.3d 770, 774 (8th Cir. 1995) (quoting *Dogpatch Props., Inc. v. Dogpatch U.S.A., Inc.* (*In re Dogpatch U.S.A., Inc.*), 810 F.2d 782, 786 (8th Cir. 1987)). This broad test is met if the proceeding "could alter the debtor's rights, liabilities, options, or freedom of action . . . and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.* (ellipsis in original) (quoting *In re Dogpatch U.S.A.*, 810 F.2d at 786). "Even a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets this broad jurisdictional test." *Buffets, Inc. v. Leischow*, 732 F.3d 889, 894 (8th Cir. 2013) (alterations omitted) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Titan Energy, Inc.* (*In re Titan Energy, Inc.*), 837 F.2d 325, 330 (8th Cir. 1988)).

We agree with the district court that the conceivable-effects test is met here. First, when the plaintiffs requested that this matter be referred to the bankruptcy court, they unambiguously informed the district court of their intent to use the default judgment against Vertical Group to reach the assets in the Kathleen Trust. And at that time, the bankruptcy court had concluded that Nathan's bankruptcy estate succeeded to Nathan's powers with respect to this trust. Second, each of the plaintiffs had filed a proof of claim in Nathan's bankruptcy based upon their claims against Vertical Group, on the ground that Nathan also is liable for these claims. Because the plaintiffs intended to use a judgment in this case to access a trust in which Nathan's bankruptcy estate has rights and because the plaintiffs were trying to satisfy the judgment in this case from Nathan's bankruptcy estate, the district court did not err by concluding that this matter could have a conceivable effect on Nathan's bankruptcy. *See, e.g.*, *In re Titan Energy*, 837 F.2d at 330 ("It remains to be seen whether, and to what extent,

[this] action will affect [the debtor's] estate. Yet, even a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test . . . ."); *Buffets*, 732 F.3d at 894 ("We think the court was correct that if [a party to the action] has an enforceable indemnification claim against [the debtor], then its claim conceivably could affect the bankruptcy."). As a result, referring this proceeding to the bankruptcy court was permitted by 28 U.S.C. § 157(a).

### 2.      Calculation of Damages

Kathleen raises two objections to the award of actual and punitive damages against Vertical Group. A district court's determination of damages in connection with a default judgment is reviewed for clear error. *Stephenson v. Batrawi*, 524 F.3d 907, 915-16 (8th Cir. 2008). The necessity of an evidentiary hearing to determine a plaintiff's damages is committed to the sound discretion of the district court. *Id.* at 916.

Kathleen asserts that the district court clearly erred in awarding damages because Vertical Group is not responsible for the plaintiffs' damages. Kathleen theorizes that the evidence from Nathan's bankruptcy case "suggests" that the complained-of misconduct is solely chargeable to a partnership between Nathan and Daryl Brown that is "independent" from Vertical Group. *See In re Reuter*, 686 F.3d at 517 ("[I]t was not clear error for the bankruptcy court to conclude that a partnership existed between Reuter and Brown."). This argument requires us to examine the distinction between facts that relate to liability and facts that relate to the amount of damages. Once a default has been entered on a claim for an indefinite or uncertain amount of damages, "facts alleged in the complaint are taken as true, except facts relating to the amount of damages, which must be proved in a supplemental hearing or proceeding." *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001); *see also* 10A Charles A. Wright et al., Federal Practice & Procedure § 2688 (3d ed. 1998). A defaulted claim thus precludes a party from contesting the facts in the

-9-

complaint that establish liability. The facts that relate to the amount of the plaintiff's damages, by contrast, are fair game.

Kathleen does her best to frame her argument in terms of the amount of the plaintiffs' damages. However, by contending that a separate partnership between Nathan and Brown committed the complained-of misconduct, she is contesting Vertical Group's liability—*i.e.*, whether Vertical Group engaged in misconduct in the first place. Because Vertical Group failed to defend against this action, Kathleen cannot now argue that Vertical Group never should have been a defendant. This defense has been lost. *See Wehrs v. Wells*, 688 F.3d 886, 893 (7th Cir. 2012) ("To permit [the defendant] to argue that [the plaintiff] should have . . . mitigate[d] his damages would allow [the defendant] to contest his liability, rather than the extent of the damages suffered from the injuries pled. This he may not do; a defaulting party 'has no right to dispute the issue of liability.'" (quoting 10 James W. Moore et al., Moore's Federal Practice § 55.32(1)(a) (3d. ed. 2012)); *see also Stephenson*, 524 F.3d at 915 n.9. Because Kathleen is impermissibly contesting Vertical Group's liability, the court did not clearly err by rejecting her argument that a separate partnership is at fault.[3]

Kathleen next argues that an evidentiary hearing was necessary to determine the amount of the plaintiffs' damages. We discern no abuse of discretion in the decision to award actual damages without an evidentiary hearing. In connection with their

---

[3]For the first time in her reply brief, Kathleen asserts that the plaintiffs failed to plead that Vertical Group committed the misconduct alleged in the complaint. This argument implicates an unsettled area of the law in our circuit. *See Everyday Learning Corp.*, 242 F.3d at 818 (describing as a "debatable proposition" whether "a default judgment conclusively establishes liability, as opposed to establishing the *fact* allegations in the complaint"). This provides all the more reason for us to enforce our general rule that we do not consider an argument raised for the first time in a reply brief. *See Union Pacific R.R. Co. v. Progress Rail Servs. Corp.*, 778 F.3d 704, 711 n.5 (8th Cir. 2015).

motion for damages, the plaintiffs submitted affidavits and documentary proof evincing how much they invested in the complained-of scheme. Neither Kathleen nor Nathan challenged the accuracy of this evidence. Because the amount of the plaintiffs' investments was readily discernable on the basis of undisputed evidence in the record, it was not an abuse of discretion to award actual damages without an evidentiary hearing. *See Taylor v. City of Ballwin*, 859 F.2d 1330, 1333 (8th Cir. 1988).

Whether an evidentiary hearing was necessary before awarding punitive damages requires closer examination. We agree with Kathleen's contention that "[a]s a general proposition, punitive damages cannot be awarded simply on the basis of the pleadings, but must instead be established at an evidentiary hearing held pursuant to Fed. R. Civ. P. 55(b)(2) because they clearly are not liquidated or computable." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1152 (3d Cir. 1990). However, we think this rule is subject to at least one exception. In *James v. Frame*, 6 F.3d 307 (5th Cir. 1993), the Fifth Circuit affirmed an award of punitive damages without an evidentiary hearing because of the district court's longstanding familiarity with the matter. *Id.* at 310-11 ("The district judge, himself, has maintained a long and close familiarity with the issues in this matter."); *see also Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508-09 (2d Cir. 1991). In such a situation, we agree that a court "should be trusted when [it] elects not to seek more evidence on matters with which [it] is already familiar." *James*, 6 F.3d at 311.

The district court referred this matter to the bankruptcy court because it was handling Nathan's bankruptcy. Not only was this referral permitted, *see* 28 U.S.C. § 157(a), but having the bankruptcy court initially consider this matter made sense from the perspective of judicial economy. At that point, the bankruptcy court had been handling Nathan's bankruptcy for more than five years. More relevant here, the bankruptcy court had conducted a trial concerning Nathan's liability to the plaintiffs. Consequently, when the bankruptcy court recommended awarding punitive damages

-11-

against Vertical Group without first having an evidentiary hearing, the court was well acquainted with the facts and the issues at stake. Indeed, the bankruptcy court already had awarded actual and punitive damages against Nathan in the same amount that it ultimately recommended awarding against Vertical Group. When Kathleen filed objections with the district court regarding the recommended award of punitive damages, she did not raise the need for an evidentiary hearing. Instead, she merely asserted, as she does here, that the evidence from the bankruptcy adversary proceeding against Nathan was insufficient to justify the imposition of punitive damages against Vertical Group. Kathleen therefore appeared to recognize, as we do here, that the bankruptcy court's adjudication of the plaintiffs' adversary proceeding provided the bankruptcy court with a basis to consider whether punitive damages were justified and in what amount. *See James*, 6 F.3d at 310-11. We thus find no abuse of discretion in awarding punitive damages without an evidentiary hearing.

## III.   Conclusion

We dismiss Nathan's appeal for lack of standing and affirm the district court's judgment as to Kathleen's appeal.

_____