Robert G. SAXTON, Alleged Employee, Plaintiff-Respondent,

v.

ST. LOUIS STAIR COMPANY, Alleged Employer, and Iowa National Mutual Insurance Company, Insurer, Defendants-Appellants.

No. 32426.

St. Louis Court of Appeals.

Missouri.

Dec. 20, 1966.

Evans & Dixon, Edward W. Warner, St. Louis, for defendants-appellants.

Hullverson, Richardson & Hullverson, Orville Richardson, Corinne Richardson, Dubail, Judge & Kilker, St. Louis, for plaintiff-respondent.

TOWNSEND, Commissioner.

This is an appeal from a judgment of the Circuit Court affirming a workman's compensation award of $10,894 by the Industrial Commission in favor of the claimant Robert G. Saxton. The sole issue in the case is whether or not Saxton was an employee of the stair company at the time of his injury.

On August 16, 1963 Saxton accidentally sustained amputation of the left arm midway between the wrist and elbow while operating a planing machine in the manufacturing plant of the stair company.

The St. Louis Stair Company is a corporation, having outstanding one hundred shares. The claimant first became connected with the company in 1947 when he entered its employment as a workman in its manufacturing plant in St. Louis. In 1953 he purchased from his father-in-law, Frank Bruckner, forty-nine of the fifty shares owned by Bruckner. Of the remaining fifty-one shares, forty-nine are registered in the name of Frank J. Jostrand, who at all relative times was the president of the cor-

poration. One share remains in the ownership of Frank Bruckner and one is registered in the name of Ben Jostrand. There is evidence in the record that the one share registered in the name of Ben Jostrand is owned by Frank J. Jostrand, who stated, "It is signed back to me." At the time of the accident claimant was secretary-treasurer of the company and was also its shop foreman in the manufacturing plant.

In each of the years 1954–1963, inclusive, the board of directors of the stair company voted an annual salary of $18,000 to Frank J. Jostrand and the same amount to Robert G. Saxton. In none of these years, however, was the income of the company sufficient to justify the payment of these salaries in full and in each of such years Frank J. Jostrand and the claimant each waived, in equal amounts, his right to a part of the salary so voted by the directors. The amount waived varied from $5500 to $12,-000. In each of the four years, 1956, 1957, 1958 and 1959, the larger amount was waived by each of the named parties. The waiver in 1962 and 1963 was for $8000 each.

Between 1946 and 1953, when Saxton acquired his shares from his father-in-law, Bruckner, and the latter retired from active participation in the management of the business, the Board of Directors voted Bruckner and Jostrand each a salary of $18,000. With the exception of perhaps two years, there was throughout this period a waiver each year of a part of the voted salaries. Appellant emphasizes that the same salary was voted to each of the shareholders holding forty-nine registered shares and that the waiver by each in each year was of the same amount.

The business of the company was carried on in two divisions, one sales and installation, over which Frank J. Jostrand exercised complete supervision; the other division, manufacturing, was immediately supervised by the claimant. Ordinarily the claimant had two carpenters working under him in the manufacturing end; at the time of claimant's injury, however, only one carpenter was so engaged. The claimant was back at the plant only twelve days after his injury and at that time was interviewed by the investigator of the stair company's insurance carrier. Questions and answers were recorded by a court reporter. He was asked "Do you own any stock in the company?", and he answered, "I own half interest in the company." Question: "You own a fifty per cent interest, is that right?" Answer: "That's right." Question: "How is the other stock held?" Answer: "By my partner, Mr. Frank Jostrand." Thereafter the insurer paid the claimant $47.50 in respect of the time immediately following the injury of August 16, 1963; the insurer also paid $846.85 in respect of medical expenses and $400.40 for an artificial arm.

This Court handed down its opinion in Voss v. Merchants Dairy Company, 373 S.W.2d 662, on December 17, 1963.

On February 14, 1964, the same claims investigator for the insurer again interviewed the claimant and took down his statement in question-and-answer form. At this interview Frank Jostrand was present and added some remarks to the answers given by the claimant. Neither the statement of August 28, 1963, nor that of February 14, 1964 is in the record; however, the content of each statement was elicited, in part, at the time of the cross-examination of the claimant in the hearing before the referee. Extensive quotation is necessary in order to illustrate the basis of the contentions herein of the respective parties. The following testimony was given with respect to the statement of August 28, 1963:

"Q. And I note that you were asked the question: Do you own any stock in the company? And you answered: I own half interest in the company. The question then was: You own a fifty per interest, is that right? The answer was: That's right. The question was then asked: How is the other stock held?

And the answer in your words was: By my partner, Mr. Frank Jostrand.

You remember those questions being asked and those answers being given at the time that statement was taken?

A. I don't remember. If they were written there, I guess I said them.

Q. They were true at that time, sir, the answers given to the questions that I have just read?

A. Yes, sir.

Q. And they are true today, isn't that correct?

A. No.

Q. Now, what I am asking you is whether or not these statements were made voluntarily by you at the time that the investigator was at the premises of the St. Louis Stair Company inquiring of your injury and of the stock ownership which you had in the company; isn't it correct that they were made voluntarily by you at that time?

A. Yes.

Q. And they were statements that comprised your general knowledge of your association with Mr. Jostrand in the company at that time, isn't that correct, sir?

A. Yes."

With respect to the statement of February 14, 1964, the following testimony was developed:

"Q. As a matter of fact, on February 14, 1964, you were asked the question: Who does the hiring of these [shop] men? And you answered: me. Isn't that correct?

A. Yes.

Q. And you were asked: Ordinarily who decided whether they worked out, meaning whether they were acceptable to the corporation, I presume, and you

answered: Me. Again, isn't that correct?

A. Yes.

\*   \*   \*   \*   \*   \*

Q. The question was again asked you on that date: You are the one that hires them and you are the one that tells them what to do? And the answer was: Yes. Is that correct?

A. Yes.

\*   \*   \*   \*   \*   \*

Q. The next question then on that date was directed to you and it was as follows: Quote, 'Do you have the right to hire and fire as far as in here goes?' And the answer was: Yes.

A. Yes.

Q. Isn't that correct? The reference was to the manufacturing end of the business, isn't that correct?

A. Yes.

Q. So that you had the right and answered yes, that you did have the right of hire and fire of the manufacturing process employees?

A. Yes, sir.

Q. Now, insofar as your own position with the company is concerned, you were asked a series of questions, were you not, sir, concerning who decided what you did on the job and who decided when you did the work and so forth? You remember those questions?

A. Yes.

Q. You remember generally that you were asked as follows: Who decides what you should do on the job? Did you decide that yourself? And you answered: I don't know what you mean now. Then it was clarified: Well, when you go to work you are going to have certain tasks that you are going to take up during the day. And you answered: Yes, sir, of course. The answer was ob-

vious. Following that, you are asked the question: Now who decides what you are going to do that day? And you answered: Me. Is that correct?

A. Yes.

Q. Then, the question was: Mr. Jostrand doesn't have anything to do with that, is that right? And you answered: He has to furnish the tickets.

A. That's right.

Q. Now, the tickets that you referred to were the same work orders or purchase orders that you mentioned this morning?

A. Yes.

Q. In other words, there would be no manufacturing process without the purchase order tickets coming through to the manufacturing plant which you manage, is that correct?

A. Yes.

Q. And you were further asked the question: Do you consider yourself as being boss of these operations that you engaged in? And the answer was: Oh, yes. I would, wouldn't you? Apparently, you in turn questioned Mr. Jostrand direct and he answered: Why, of course.

A. Yes.

Q. Is that correct?

A. Yes.

Q. Those questions and answers and statements were made?

A. Yes.

Q. They were true and correct at the time they were made?

A. Yes.

Q. And they are true and correct today also?

A. Yes, sir.

Q. Again on February 14, 1964 you were asked the question, were you not, Quote: 'Does anyone have the right to fire you?' Quote. And you answered: No. Is that correct?

A. Yes, sir."

\* \* \* \* \* \*

"Q. And further, in keeping with the relationship you had with Mr. Jostrand he made a statement which is contained in the statement taken of you and he said as follows in respect to whether there were corporate meetings, executive meetings, and so forth. Rather than you answering the question, Mr. Jostrand apparently interspersed his answer, quote, 'We have a meeting here every day. We talk about whatever comes up, about what we were getting for the job, what jobs we are going to do, and what we are going to turn down', close quote. Now, again, in that respect he was discussing and talking about meetings between you and he, Mr. Jostrand, is that correct?

A. Yes, sir.

Q. And when he said we, we, we, he meant you and he, Mr. Jostrand, isn't that correct?

A. Yes, sir."

After verifying, upon cross-examination, that he had said on February 14, 1964, that no one had the right to fire him, claimant subsequently repudiated that statement by testifying that "Mr. Jostrand can fire me." He then stated that this clarification of the February 14 statement came about subsequent to being advised as to the status of employee and employer under the compensation act and that "until such time as that clarification was made, either by legal adviser, by referee, or by your attorneys," he stood by the answers that were given in the February 14 statement. Similarly, upon cross-examination, he asserted that his answers on August 28, 1963, that he owned a half interest in the company, that his was a fifty per cent interest and that the other

stock was held by his partner, Frank Jostrand, were true on August 28. However he testified that such answers were not true on the date of the hearing before the referee.

Referring to the August 28 statement, claimant was asked:

"Q. Could you tell us what you meant when you termed Mr. Jostrand or called him your partner?

A. I could have called him my buddy or my pal or anything else. I mean, partner was just a word I used.

Q. Then, your explanation of the term 'partner' is that it had nothing to do with a fifty-fifty ownership or partnership in the business enterprise, is that correct?

A. That's right."

Until about March 1, 1964, the question of claimant's status as an employee or employer had never been brought up. There is no evidence of any communication between insurer and claimant between February 14, 1964 and March 13, 1964, but upon the latter date claimant called upon the legal adviser at the Division of Workmen's Compensation. Upon cross-examination claimant was asked whether he had had since that date "all sorts of advice as to what your status was" and he answered: "From my own attorneys, yes."

At the hearing before the Referee the claimant was the only witness. Pertinent parts of the by-laws of St. Louis Stair Company were read into the record and claimant entered as exhibits copies of the minutes of the meeting of the shareholders of that Company on February 4, 1963 and of the Board of Directors meeting on the same date. The medical and surgical record is not relevant to the only issue in the case.

Claimant testified as to the inception of his connection with the company in 1947, his purchase of forty-nine shares from his father-in-law in 1953, the latter's continued retention of one share, the identities of the President, Vice-President and Secretary-Treasurer and the nature of claimant's duties in the last named position. He stated that in addition to being an officer of the company he was the shop foreman in the manufacturing division of the company and he detailed his duties in that capacity as the layout of rail, the layout of carriages, the cutting, gluing up, dressing and sanding of treads, risers and stringers and the general layout work of stairs, in the course of which he personally did carpentry work and operated shop machines. Later he characterized himself as the boss over the men in the shop, although he worked right along with the carpenters.

On direct examination claimant's testimony developed the thesis that overall management of the corporate affairs was in the hands of Frank Jostrand, president, and that claimant was subject to his orders. He stated that he was originally placed in his position as shop foreman by Jostrand, that he had never made any decision against Jostrand's express wishes or statement to the contrary, that he had taken directions and instructions from him and upon occasion he had followed instructions which were contrary to his own idea of the way in which the matter should be handled —without specification of any such incidents. When there was a difference of opinion as to placement of the company's insurance, Jostrand made the decision. Company contracts for the installations of stairs were signed by Jostrand. When new employees were needed in the shop, claimant made recommendations to Jostrand and they would confer on the matter; after that Jostrand "said if I would need the men to go ahead and hire them if they were good men." The company's premises were burglarized several times and in order to stay in production purchases of new tools and equipment were necessary; those used inside the shop were ordered by claimant after consultation with Jostrand—"I spoke to Mr. Jostrand about it and he said to re-

place them,"—while outside tools were bought by Jostrand.

The Workmen's Compensation Act provides: "The word 'employee' as used in this chapter shall be construed to mean every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election." Sec. 287.020 V.A.M.S. Our case law has explained the service referred to in this manner: "The relationship is bottomed upon services * * * to be rendered by the servant * * * to the other, whether as master or employer, and is peculiarly characterized by right of control vested in the latter * * * the word service, as used, signifies, as already pointed out, controllable service." Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909. The word employer is defined as "(1) Every person * * * using the service of another for pay; * * *." Sec. 287.030 V.A.M.S.

The scope of review of an award of the Industrial Commission is limited in this manner: "Upon appeal no additional evidence shall be heard and in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law * * *." Sec. 287.490, V.A.M.S.

■ In the present case under the heading Findings of Fact the Industrial Commission has stated: "Was above employee in the employment of above employer at the time of accident? Yes." Under the circumstances of this case, this finding was quite obviously not a finding of fact; it was a conclusion of law which, if accepted, determined the only issue here present. The validity of the conclusion that the claimant was an employee would depend upon findings of fact which would support it. Under the above definitions and the holdings of the Supreme Court, such necessary facts were two in number, one, that the claimant was in the service of the

St. Louis Stair Company, and, two, that said services were controllable. The award of the Commission makes no forthright findings of the character last indicated. Under the head of Additional Findings of Fact and Conclusions of Law the award states: "The evidence suggests that even in the production field Jostrand at times exercised control over Saxton and that, in any event, the corporate by-laws clearly indicate that as corporate president the right of control was fully vested in him." The first is not a finding of fact; the second recites only the purport of the by-laws and so leaves untouched the question of whether or not the parties really operated outside the corporate form. Accordingly, we do not have before us any findings as to the fundamental underlying facts which, the Statute commands, shall be conclusive and binding. Near the end of the award the Commission said: "We think that on August 16, 1963 * * * he was an employee in the service of the appellant corporation. We so hold." This again was a conclusion, not made on the basis of any precise findings of fact, and so brings the whole matter within the operation of the rule that "decisions of the commission which are clearly the interpretation or application of the law, as distinguished from a determination of facts, are not binding upon us and fall within our province of review and correction." Williams v. Anderson Air Activities, Mo.App., 319 S.W.2d 61, 65–66; Merriman v. Ben Gutman Truck Service, Inc., Mo., 392 S.W.2d 292. The determination that one is an "employee" involves a question of law no less than does the determination that one has suffered an "accident". See Baker v. Krey Packing Co., Mo.App., 398 S.W.2d 185; Miller v. Lever Brothers Co., Mo.App., 400 S.W.2d 625.

The appellants would have us find that the historic ordering of the affairs of the stair company clearly shows that claimant was not an employee "but was, in fact, with his 'partner', *the* corporation"—in effect that Jostrand and Saxton in reality

carried on the affairs of the business as co-owners and hence as partners.

In support of their contention, the appellants urge upon us the holding in Voss v. Merchants Dairy Company, supra. We do not find that case controlling here. In the Voss case the compensation claimant was the president and manager of the alleged employer corporation, which had only one other shareholder. Claimant testified that in the management of the business he "did whatever I thought I should do at the time"; this Court found that there was no evidence that he rendered any controllable service and that the Commission's finding that he was an employee was based on speculation, surmise and guesswork. The complete lack of evidence of controllable service clearly differentiates that case from the present one.

■ Section 287.490, V.A.M.S., limiting an appellate court to a review of questions of law, refines that limitation further by providing that the court "may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds *and no other*:

\* \* \* \* \* \*

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award."

Hence it is obvious that it does not fall within the province of the court to weigh the evidence for the purpose of determining whether it would arrive at the same conclusion as the Commission. However the requirement of "sufficient competent evidence" does necessitate the evaluation of certain portions of the evidence submitted.

■ The use of the corporate form is not necessarily determinative of the question of whether claimant was in the service of the corporation, despite the observance of certain corporate formalities. Human experience requires that a realistic approach be taken; that approach recognizes the possibility that parties may be in the service of themselves as co-entrepreneurs although they utilize the corporate form when convenient for their purposes. It is possible for parties to have followed such a course of conduct that it becomes apparent that they intended to carry on as partners because their arrangement of the affairs of the particular enterprise was such as to indicate that they operated by mutual agreement outside the confines of corporation law. Whenever the evidence justifies the latter conclusion, the time has arrived to pierce the corporate veil.

■ Here we are presented with the picture of a small and closely-held corporation which might well be called a two-man enterprise or at least a two-family concern. We attach no significance to the fact that Jostrand held fifty shares and claimant forty-nine, since the hundredth share was in the possession of claimant's father-in-law. In that situation it would come naturally for claimant to say that he had a half-interest in the company, although the statement was not technically correct; in any event he disclosed in the statement of August 28 that his father-in-law held one share—neither do we attribute great significance to claimant's statement that the other stock was held by his "partner, Mr. Frank Jostrand." In such a closely-held company where all managerial functions were concentrated in two men whose activities were completely differentiated and yet complemented one another in the consummation of the company's business, we believe that the word "partner" would come naturally to one of them when making reference to the other. This seems especially likely where the person using the term was unschooled in the law.

The evidence which tends most to support appellants' position that Jostrand and Saxton operated as partners is that which shows that from 1946 to 1963 salaries of two persons, each owning forty-nine or fifty shares, were fixed at the same amount

and that through the operation of waivers such equality of salaries was apparently designed to absorb most of the earnings of the enterprise.* There is no evidence that the company ever paid a dividend.

■ In considering the question of whether there is substantial competent evidence to sustain an award, the reviewing court must view the evidence including all reasonable inferences therefrom in a light most favorable to the award. Merriman v. Ben Gutman Truck Service, Inc., Mo., 392 S.W.2d 292, 296, and cases cited therein. And so we proceed to consider whether on the whole record there was competent evidence of the underlying fact necessary to reach the legal conclusion that claimant was an employee. That question of fact was: Was claimant in the controllable service of the corporation?

The company was incorporated in 1932. Since that time it has functioned as a corporate entity. The evidence shows that it had a regular checking account, that it had retained counsel, that it employed persons other than claimant in its installation crew and in the shop and that in respect of such employees it paid withholding and social security taxes in the corporate name. Regular minutes of shareholders' and directors' meetings were kept. Six months before claimant's injury the annual meeting of shareholders was held; at that meeting four directors were elected in accordance with the provisions of the by-laws. The minutes show that Frank Jostrand reported that he had traded in a company-owned station wagon on the purchase of a later model. On the same date the Board of Directors met and elected corporate officers as follows:

President, Frank J. Jostrand
Vice-President, Frank Bruckner
Secretary-Treasurer, Robert G. Saxton.

The president reported that due to business conditions it was not possible to pay the salaries of officers for 1962 previously authorized. Thereupon Jostrand and Saxton each waived $8000 of his salary and agreed to accept $10,000 as full salary for the year 1962.

■ The by-laws of the Company specify the duties of the officers and in respect to the President provide:

The President shall preside at all meetings of the Board of Directors, shall sign all notes, agreements, or other instruments in writing made and entered into for or on behalf of the corporation, and sign all certificates of stock; and he shall have general supervision over the business and affairs of the corporation.

Under the corporate form of organization the right of corporate officialdom to control the operational activities of a shop foreman is clear. In the by-law last quoted the power and right of the corporation president to supervise the foreman is made explicit. Turning to an old friend, Webster's Third International Dictionary, Unabridged, one finds that "supervise" means "to co-ordinate, direct, and inspect continuously and at first hand the accomplishment of" another, or to "oversee with the powers of direction and decision the implementation of one's own or another's intentions." No doubt can be had that the by-law gives the president the power and right to control the operations of a shop foreman. Whether one is in the controllable service of another depends upon the *right* to control. Maltz v. Jackoway-Katz Cap Company, supra; Soars v. Soars-Lovelace, Inc., 346 Mo. 710, 142 S.W.2d 866.

■ In addition to the right to control by virtue of the by-law, claimant's evidence shows actual control by the president of claimant's activities as shop foreman. While we are not greatly impressed by some

---

* There are no balance sheets or earnings statements of St. Louis Stair Company in evidence.

contrived answers of claimant, given upon his direct examination before the referee, it was the function of the Commission to pass upon the credibility of such testimony. Monical v. Armour & Co., Mo., 307 S.W.2d 389; Scott v. Wheelock Bros., Inc., 357 Mo. 480, 209 S.W.2d 149. In any event, such a defect, if it be such, did not run to the whole of claimant's testimony.

■ It must be held that there was substantial competent evidence to support the award. And it cannot be found that such substantial evidence was overwhelmed by the great weight of the evidence contra.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, judgment is affirmed.

ANDERSON, Acting P. J., RUDDY, J., and LACKLAND H. BLOOM, Special Judge, concur.