# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1339

_____

In re:  Nathan Paul Reuter,             *
                                        *
            Debtor,                     *
------------------------------          *
                                        *
Nathan Paul Reuter,                     *
                                        *
            Appellant,                  *
                                        *   Appeal from the United States
        v.                              *   Bankruptcy Appellate Panel
                                        *   for the Eighth Circuit.
Tana S. Cutcliff; James A. Fields;      *
James D. Fields; Joshua P. Haeflinger;  *
LaDonna S. Henderson, As Trustee for    *
LaDonna S. Henderson Living Trust;      *
Patricia A. Reitz, as Trustee for       *
Frances L. Reitz Trust; Terry J.        *
Schippers; James D. Teegarden II;       *
Michael S. Trom,                        *
                                        *
            Appellees.                  *

_____

Submitted: November 15, 2011
Filed: July 17, 2012

_____

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Nathan Paul Reuter appeals from a decision of the Bankruptcy Appellate Panel ("BAP") affirming an order of the bankruptcy court.[1]  After a bench trial, the bankruptcy court ruled that Reuter's debts to nine creditors (the appellees in this case) are non-dischargeable in bankruptcy.  For the reasons discussed below, we affirm.

## I.    Background

Reuter was a successful real estate developer and mortgage financier in Springfield, Missouri.  Seeking to expand, he relocated to Columbia, Missouri in 2001 and purchased a modern, state-of-the-art office building.  In 2003, he formed Vertical Mortgage LLC ("Vertical") with the help of Daryl Brown, a counterpart from another mortgage finance company, who claimed to have impressive contacts in the world of securities and investment banking.  Vertical operated out of Reuter's office building in Columbia.

In early 2004, Brown brought Reuter a purported opportunity to finance the development of a golf resort.  At Brown's direction, Reuter paid $111,000 in cash to the developer, whom Brown described as a long-time associate.  Reuter then traveled to Germany with Brown and the developer to "close the deal," but no one else showed up at the meeting, the "deal" folded, and Reuter lost the $111,000. (Reuter eventually would sue Brown for fraud based on that transaction.)  Also early in 2004, Reuter assisted Brown in obtaining a mortgage because Brown's credit score was too low to qualify, and Reuter later became aware that Brown missed payments on that mortgage.  Finally, in early 2004 the Missouri Commissioner of Securities initiated an investigation of Vertical's securities arm, which was directed by Brown, leading to a $5,000 fine and a December 2004 consent order in which Reuter admitted that Vertical had misrepresented its securities licensure status.  Nevertheless, Reuter

---

[1]The Honorable Dennis R. Dow, United States Bankruptcy Judge for the Western District of Missouri.

testified that, at the time, none of these events caused him to doubt Brown's qualifications as a securities investment manager.

In late 2004, Brown offered Reuter the chance to participate in a "high-yield, zero-risk" investment opportunity. Reuter in turn solicited his good friend and neighbor, creditor/appellee Mike Trom, to participate. Although that investment failed, Reuter later solicited creditor/appellees LaDonna Henderson, James A. Fields, James D. Fields, and Patricia Reitz to participate in a similar opportunity. Brown and other Vertical employees also solicited creditor/appellees Tana Cutcliff, Joshua Haeflinger, Terry Schippers, and James Teegarden. Vertical's scheme was to lure potential victims with the promise of attractive development loans, conditioned on the loan-seeker's ability to produce six-figure cash collateral. After the potential victim confirmed the ability to produce that much cash, Vertical would offer the high-yield, zero-risk investment instead. The potential victims were told that their principal would be placed in an escrow account, used to "leverage" standby letters of credit, and then returned, along with potentially high commissions and interest. Reuter's clean background and verifiable ownership of the impressive office building helped prevent the victims from becoming suspicious. Of course, Brown controlled the "escrow" accounts and appropriated the victims' money.[2] Each creditor in this case lost between $50,000 and $300,000.

In 2005, the State of Missouri initiated a state civil suit against Vertical and its members, officers, and directors (including Reuter) for the sale of unregistered securities and misrepresentations about the nature of the instruments offered and sold. That proceeding primarily addressed conduct with investors other than the nine creditors in this case. In 2006, the nine creditors filed their own suit against Vertical

---

[2]Brown was convicted on criminal charges of wire fraud for his conduct in 2008. *See United States v. Brown*, 627 F.3d 1068 (8th Cir. 2010), *cert. denied*, 565 U.S. ---, 132 S. Ct. 274 (2011).

and Reuter in federal district court in the Western District of Missouri. Soon afterwards, Reuter filed for bankruptcy under Chapter 11, staying the creditors' lawsuit. Reuter listed the nine creditors' claims as contingent, unliquidated, and disputed and proposed a Chapter 11 plan that would settle the claims. The nine creditors in turn objected to the Chapter 11 plan and filed an adversary proceeding against Reuter, incorporating their original complaint and asserting that their claims against him were non-dischargeable in bankruptcy. Meanwhile, in 2008, Reuter settled the State of Missouri suit. The consent judgment for the State of Missouri suit stated that no restitution was awarded to the nine creditors in this case because their "claims for monetary relief will be determined and adjudicated by the United States Bankruptcy Court."

After a combined hearing on the issues of dischargeability and plan confirmation, the bankruptcy court held the claims non-dischargeable under 11 U.S.C. § 523(a) on each of three grounds. First, it found that all nine creditors had been defrauded by Brown and that Reuter was vicariously liable for his partner's fraud for purposes of § 523(a)(2)(A) (stating that a debt for money obtained by "false pretenses, a false representation, or actual fraud" is not dischargeable ). Second, it found that five of the nine creditors (Trom, Henderson, James A. Fields, James D. Fields, and Reitz) also were defrauded directly by Reuter for purposes of the same section. (As a practical matter, the finding of direct fraud as to those five creditors added nothing to the amount of their non-dischargeable claims established under the first ground.) Third, it found that Reuter sold unregistered securities to the latter group of five creditors in violation of state securities law and, thus, those five creditors' claims also were non-dischargeable under § 523(a)(19). This third ground provided relief in addition to that available under each of the first two grounds, because it rendered the attorney's fees incurred by those five creditors a non-dischargeable debt as well. Finally, the bankruptcy court rejected Reuter's Chapter 11 plan. It later granted the nine creditors' motion to convert to a Chapter 7 bankruptcy.

Reuter appealed the bankruptcy court's order to the BAP, which affirmed in all respects. Reuter now appeals, arguing that the bankruptcy court erred in finding that Reuter was vicariously liable for Brown's fraud, that Reuter personally defrauded five of the creditors, and that Reuter personally "sold" the unregistered securities, as required to establish a private right of action for the creditors under Missouri securities law.[3]

## II.    Discussion

We apply the same standards of review as the BAP, reviewing the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*. *In re Burnett*, 646 F.3d 575, 579 (8th Cir. 2011).

### A.    Liability on the Underlying Claims

As an initial matter, Reuter contends that the bankruptcy court erred by granting non-dischargeability of the nine creditors' claims without considering whether he actually owed a debt to the creditors under any state tort theory. "[C]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Travelers Cas. and Sur. Co. of Am. v. Pac. Gas and Elec. Co.*, 549 U.S. 443, 450 (2007) (quoting *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000)). "That principle requires bankruptcy courts to consult state law in determining the validity of most claims." *Id.* Creditors may create a presumption that their claims are valid by filing formal proofs of claim against the

---

[3]Some of the section headings in Reuter's opening brief purport to challenge the denial of confirmation of his Chapter 11 plan and conversion to Chapter 7 bankruptcy. However, Reuter's brief presents no meaningful argument on these issues. Thus, we consider them waived. *See Chay-Velasquez v. Ashcroft*, 367 F.3d 751, 756 (8th Cir. 2004).

bankruptcy estate, *see* Fed. R. Bankr. P. 3001(f), but the nine creditors in this case did not do so and, thus, bear the burden of proof on the issue.

To support his assertion that the bankruptcy court failed to consider the validity of the claims under state law, Reuter relies primarily on one isolated statement by the bankruptcy judge after the close of evidence at the combined hearing (emphases added):

> And I guess you need to understand that what my view is *what we're trying here is the non-dischargeability of the claims*, which means that if I might conclude that you had a claim, but if I conclude that it isn't non-dischargeable, I'm going to go to the latter issue, and I'm going to dispose of it that way, *which means you may not have any ruling whatsoever on the question of whether you've got a claim against Nate Reuter or not.* I might go straight to the issue of [regardless of] whether the plaintiffs have a claim or they don't have a claim, it's not non-dischargeable.

Importantly, in preface to this statement, the bankruptcy court announced that it was addressing "some things I know I want you to focus on in the [post-trial] briefing" and noted that the creditors' pretrial brief only addressed "the claims in the underlying federal complaint and [did not] talk at all [about] non-dischargeability." Taken in context, then, the quoted statements do not indicate that Reuter's underlying liability on the claims was not at issue, but only that a ruling on underlying liability might not be necessary if the creditors failed to establish that such claims would be non-dischargeable in any event.

The record as a whole confirms that the bankruptcy court was acutely aware of the creditors' burden to prove Reuter's underlying liability on their claims. For example, during the creditors' opening statement at the combined hearing, the bankruptcy court advised the creditors "to keep in mind that establishing a claim on, based on state law or tort law or whatever, is different from establishing

non-dischargeability under §523, which has its own elements." Likewise, before Reuter introduced his first witness, the bankruptcy court stated "there are at least a couple of layers of issues here. One, whether there are claims and second, whether they are non-dischargeable. And it's conceivable that in any given count the plaintiffs could succeed in accomplishing the first and not the second." Satisfied that the bankruptcy court was mindful of the need to establish Reuter's underlying liability under state law before concluding that the claims were non-dischargeable under bankruptcy law, we proceed to address the sufficiency of each finding of liability and non-dischargeability.[4]

## B.    Vicarious Liability for Brown's Fraud

Reuter next challenges the bankruptcy court's holding that Reuter was vicariously liable for Brown's fraud under Missouri partnership law.[5] As stated by the bankruptcy court, a partnership is "an association of two or more persons to carry on as co-owners a business for profit." *Hillme v. Chastain*, 75 S.W.3d 315, 317 (Mo. Ct. App. 2002) (quoting Mo. Rev. Stat. § 358.060.1). "The partnership agreement may be written, expressed orally, or implied from the acts and conduct of the parties." *Id.* The party asserting the existence of a partnership must prove its existence "by clear, cogent, and convincing evidence." *Id.*

---

[4]We note that the BAP ruled that Reuter conceded the validity of the claims under state law by offering to satisfy the claims in his proposed Chapter 11 plan. *See Reuter v. Cutcliff (In re Reuter)*, 443 B.R. 427, 434 (8th Cir. BAP 2011). Because we find that the bankruptcy court made sufficient factual findings to establish Reuter's liability on the claims under Missouri law, we leave open the question of whether a debtor may concede the validity of an otherwise disputed claim by offering to satisfy the claim in a proposed Chapter 11 plan.

[5]Reuter does not contest the fact that Brown committed fraud and that Brown's fraud caused the nine creditors' damages.

Reuter contends that the bankruptcy court erred in relying on the state-court pleadings from Reuter's own fraud lawsuit against Brown, in which Reuter alleged that he and Brown had a partnership agreement. Under Eighth Circuit law, "factual statements in a party's pleadings are generally binding on that party unless the pleading is amended," *Knudsen v. United States*, 254 F.3d 747, 752 (8th Cir. 2001), although Missouri law places different limits on such use of pleadings, *cf. Bank of Am., N.A. v. Stevens*, 83 S.W.3d 47, 56 (Mo. Ct. App. 2002) ("As pleadings are addressed to the trial court, and not to the jury, the general rule is that pleadings are inadmissible in evidence."). In any event, even if we discount the evidentiary value of the petition itself, the bankruptcy court also cited Reuter's deposition testimony in the instant case confirming the accuracy of the relevant factual allegation from his petition.[6] Moreover, the bankruptcy court relied on abundant evidence from other sources, including Reuter's deposition testimony in the State of Missouri suit that Vertical "was a group of, you know, guys [including Brown] that . . . acted as partners

---

[6]We rely not on "vague deposition testimony," as the dissent would characterize it, but on Reuter's express affirmation, under oath, that he entered into an oral partnership agreement with Brown as alleged in his petition:

Q. And that was under a partnership agreement between you and Daryl, correct?
[objection]
A. There was no partnership agreement.
Q. Have you read the lawsuit that you filed against Daryl Brown?
A. It was a verbal agreement.
Q. Okay.
A. I mean, it wasn't like we had – I don't think there was ever any doc[ument]s. . . .
Q. So you had an oral agreement to do this –
A. Yes.
Q – with Daryl Brown? . . . .

Reuter Dep. 155:16-156:8, July 31, 2008.

and worked together" and trial testimony from an employee of Vertical that Reuter and Brown were partners. Based on this evidence, it was not clear error for the bankruptcy court to conclude that a partnership existed between Reuter and Brown.

As there is no dispute that Brown's fraud was perpetrated in the ordinary course of Vertical's business, the fraud must be imputed to Reuter under state law. *See Dwyer v. ING Inv. Co., Inc.*, 889 S.W.2d 902, 906 (Mo. Ct. App. 1994) (citing Mo. Rev. Stat. § 358.130). Accordingly, the bankruptcy court did not err in finding that the nine creditors' underlying claims against Reuter were valid based on his vicarious liability for Brown's fraud under Missouri law.[7]

Reuter also challenges the bankruptcy court's holding that these claims are non-dischargeable under 11 U.S.C. § 523(a)(2). According to Reuter, the bankruptcy court erred by relying on federal common law, rather than Missouri law, to determine the non-dischargeability of claims based on vicarious liability for a partner's fraudulent acts. To the contrary, while the validity of a creditor's tort claim must be established under state law, the dischargeability of the claim under § 523(a)(2)(A) is governed by "the general common law of torts, the dominant consensus of common-law jurisdictions, rather than the law of any particular State." *Field v. Mans*, 516 U.S. 59, 70 n.9 (1995).

---

[7]The dissent erroneously states that the bankruptcy court considered vicarious liability solely in the context of non-dischargeability under United States Supreme Court and Eighth Circuit law and never made the requisite findings under state law. To the contrary, the bankruptcy court expressly cited and applied solely Missouri state law to determine Reuter's underlying partnership liability status. *See In re Reuter*, 427 B.R. at 757-58 (citing, in order of appearance, *Hillme v. Chastain*, 75 S.W.3d 315, 317 (Mo. Ct. App. 2002); Mo. Rev. Stat. § 358.070; *Meyer v. Lofgren*, 949 S.W.2d 80 (Mo. Ct. App. 1997); *Morrison v. Labor & Indus. Relations Comm'n*, 23 S.W.3d 902 (Mo. Ct. App. 2000); and *Binkley v. Palmer*, 10 S.W.3d 166 (Mo. Ct. App. 1999)).

The bankruptcy court found that the "record is replete with examples of the manner in which Brown and [Reuter] held themselves out as partners and the Court finds any testimony from [Reuter] to the contrary unpersuasive." Reuter fails to demonstrate that this finding is clearly erroneous. This is sufficient under the common law of agency and partnership for Brown's fraud on the nine creditors to be imputed to Reuter. *See Strang v. Bradner*, 114 U.S. 555, 561 (1885) (denying a discharge in bankruptcy to two innocent partners of a fraudulent businessman because "if, in the conduct of partnership business, and with reference thereto, one partner makes false or fraudulent misrepresentations of fact to the injury of innocent persons who deal with him as representing the firm, and without notice of any limitations upon his general authority, his partners cannot escape pecuniary responsibility therefor upon the ground that such misrepresentations were made without their knowledge").

We have required at least recklessness on the part of a debtor to whom a partner's fraud is imputed in order to render such a debt non-dischargeable under § 523(a)(2)(A). *See Matter of Walker*, 726 F.2d 452, 454 (8th Cir. 1984) (per curiam) ("If the debtor was recklessly indifferent to the acts of his agent, then the fraud may also be attributable to the debtor-principal [for purposes of discharge under § 523(a)(2)(A)]."). We note that a requirement of recklessness appears to contravene controlling authority established by the Supreme Court in *Strang*. *See, e.g.*, *Deodati v. M.M. Winkler & Assocs. (In re M.M. Winkler & Assocs.)*, 239 F.3d 746, 749 (5th Cir. 2001) ("*Strang* is still good law. In recent years, [the Fifth Circuit] and others have relied on it to bar discharge on behalf of innocent debtors for a partner's fraud."). Even under our stricter standard, however, the bankruptcy court found "numerous examples of red flags which should have alerted [Reuter] to the obvious conclusion" that "Brown was involved in a fraudulent scheme to steal [the creditors'] money," such as Brown's poor financial condition and the 2004 investigation by the Missouri Commissioner of Securities. Again, Reuter fails to demonstrate that this finding is clearly erroneous. Because Reuter was, at minimum, recklessly indifferent

-10-

to the fact that Brown was using Vertical to defraud the creditors, we affirm the bankruptcy's court's ruling that Reuter's liability for his partner's fraud is non-dischargeable under § 523(a)(2)(A).

## C.  Direct Common-Law Fraud by Reuter

Next, Reuter challenges the bankruptcy court's holding that he directly committed common-law fraud on five of the creditors.  In particular, while the bankruptcy court found that the creditors' reliance on Reuter's misrepresentations was "justifiable," Reuter contends that the bankruptcy court never found that the creditors' reliance met the stricter standard of "reasonable" reliance, which Reuter asserts is required under the Missouri law of fraud.  *See Trimble v. Pracna*, 167 S.W.3d 706, 712 (Mo. 2005) ("The reliance must be proven to be reasonable.").  In opposition, the creditors direct us to a long line of Missouri cases applying the "justifiable" reliance standard.  *See, e.g.*, *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 132 (Mo. 2010) ("Generally, whether a party has justifiably relied on a misrepresentation is an issue of fact for the jury to decide."); *see also Rakes v. Life Investors Ins. Co. of Am.*, 582 F.3d 886, 894 (8th Cir. 2009) (reading Missouri case law as applying the "justifiable" reliance standard).  We need not resolve the parties' dispute about the Missouri law of fraud, however, because the finding of direct fraud was merely an alternate ground for Reuter's liability to five of the nine creditors and provided no additional relief to those five creditors.  Given that we have affirmed Reuter's liability to all nine creditors under the theory of vicarious liability for Brown's fraud, as well as the non-dischargeability of those claims, we decline to reach the issue of Reuter's direct fraud.

## D.  State-Law Securities Fraud

Finally, Reuter challenges the bankruptcy court's holding that he violated the Missouri Securities Act of 2003, Mo. Rev. Stat. § 409.1-101–409.7-703, with respect

to five of the creditors. Unlike the holding with respect to Reuter's alleged common-law fraud, this holding provides additional relief to those five creditors in the form of an award of reasonable attorney's fees, *see* § 409.5-509(b)(3), and we address it on the merits.

Section 409.5-509(b) provides a private right of action to a purchaser of securities, stating that "[a] person is liable to the purchaser if the person sells a security" either (1) in violation of section 409.3-301, or (2) by means of an untrue statement or misleading omission of material fact. In turn, section 409.3-301 makes it unlawful "for a person to offer or sell" an unregistered security in Missouri, absent certain exceptions not applicable here. The bankruptcy court found that Reuter was liable to the five creditors under both prongs of section 409.5-509(b).[8]

Reuter contends that the bankruptcy court erred in ruling that section 409.5-509(b) may be violated by an offer to sell, rather than solely by an actual sale. Although one basis of liability in section 409.5-509(b) incorporates section 409.3-301, which refers to both selling and offering to sell securities, section 409.5-509(b) itself refers only to a "purchaser" and a person who "sells" securities. We need not resolve the question of whether section 409.5-509(b) may be violated by an offer to sell, however, because the bankruptcy court made a factual finding that Reuter actually sold the securities to the five creditors at issue. While some Vertical employees testified that Reuter "didn't sell any investments," detailed testimony from

---

[8]On appeal to the BAP and again here, Reuter claims that there is no evidence in the record that the securities were unregistered. However, Reuter conceded both in testimony and in his post-trial brief that the securities were unregistered. "The general rule is that '[n]ormally, a party may not raise an issue for the first time on appeal as a basis for reversal.'" *Von Kerssenbrock-Praschma v. Saunders*, 121 F.3d 373, 375 (8th Cir. 1997) (quoting *Seniority Research Grp v. Chrysler Motor Corp.*, 976 F.2d 1185, 1187 (8th Cir. 1992) (alteration in original)). Therefore, like the BAP, we decline to address any argument that the securities were not registered. *See In re Reuter*, 443 B.R. at 435.

the creditors themselves about the role Reuter played in their purchases supports the finding that Reuter made these sales. Based on the understanding of the individuals purchasing the securities, the bankruptcy court's view of the conflicting evidence certainly is a permissible one. *See In re Hixon*, 387 F.3d 695, 700 (8th Cir. 2004) ("[Where] the evidence presented in the record could be susceptible to differing interpretations, we may not hold that the bankruptcy court's chosen interpretation is clearly erroneous where there is more than one permissible view of the evidence."). As a result, we find no clear error in the finding that Reuter personally sold the securities. Thus, Reuter was liable to the five creditors under state securities law because he sold securities (1) that were unregistered, and (2) by means of fraudulent statements, each of which constitutes a violation of Mo. Rev. Stat. 409.5-509(b).

Reuter does not challenge the bankruptcy court's ruling that these claims based on state securities law, if valid, are non-dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(19) (establishing non-dischargeability for any debt that "(A) is for . . . (i) the violation of . . . any of the State securities laws, or any regulation or order issued under such . . . State securities laws"). As a result, we affirm the bankruptcy court's ruling that Reuter's liability to five of the creditors for securities law violations, including his liability for the associated award of attorney's fees, is non-dischargeable under § 523(a)(19).

## III. Conclusion

For the foregoing reasons, we affirm the bankruptcy court's order finding Reuter's debts to the nine creditors non-dischargeable in bankruptcy.

SMITH, Circuit Judge, concurring in part and dissenting in part.

I concur in the panel majority's holdings that the bankruptcy court correctly decided that (1) Reuter's debts are non-dischargeable under 11 U.S.C. § 523; (2) the

bankruptcy code required the court to apply federal law to determine the question of non-dischargeability; and (3) Reuter sold unregistered securities in violation of Missouri law. I respectfully dissent from the court's holding that the bankruptcy court made sufficient findings to adjudicate the nine investors'[9] underlying fraud claim. *Supra* Part II. B.

In determining whether a claim is non-dischargeable under § 523(a)(2), a bankruptcy court must engage in two separate analyses. The court must analyze the claims under federal law as required by § 523, and the court must analyze the claims under substantive state law. *See, e.g.*, *Dallam v. Lawyers Title Ins. Corp. (In re Dallam)*, 850 F.2d 446, 449 (8th Cir. 1988) (concluding that the claimant produced sufficient evidence to establish both fraud under Missouri law and non-dischargeability under § 523(a)(2)).

The majority holds that "the bankruptcy court did not err in finding that the nine creditors' underlying claims against Reuter were valid based on his vicarious liability for Brown's fraud under Missouri law." But the bankruptcy court never made this finding. The bankruptcy court's 54 page opinion omitted any finding that the investors proved their underlying Missouri vicarious liability claim against Reuter. Rather, the court merely concluded that the investors' vicarious liability claim was non-dischargeable under § 523(a)(2).[10] Yet, the majority holds that the bankruptcy

---

[9]The majority uses the term "creditors" to refer to the investors that sued Reuter for fraud. I prefer to use the term investors because the purpose of this appeal is to determine whether the nine people that invested with Reuter are creditors for bankruptcy purposes.

[10]The bankruptcy court decided "whether the evidence supports a finding that Brown and [Reuter] were partners such that Brown's fraud should be imputed to [Reuter] under *U.S. Supreme Court and Eighth Circuit precedent*." *Cutcliff v. Reuter (In re Reuter)*, 427 B.R. 727, 743–59 (Bkrtcy. W.D. Mo. 2010).

-14-

court made sufficient findings in its non-dischargeability analysis under § 523(a)(2) for this court to find that the investors proved their claim.

In so holding, the majority relies on vague deposition testimony in which Reuter responds affirmatively to whether Brown was "the cause of the problems with the[] investments."[11] Although the bankruptcy court concluded that Reuter's deposition testimony was sufficient to find the investors' claims non-dischargeable under § 523, it may not have found this deposition testimony sufficient to hold Reuter liable for Brown's fraud under Missouri law.[12] Because the "bankruptcy court's findings are silent or ambiguous as to [this] outcome determinative fact question, [in my opinion], we may not make our own findings but must remand the case to the bankruptcy court for the necessary factual determination." *Baldwin v. Credit Based Asset Servicing & Securitization*, 516 F.3d 734, 737 (8th Cir. 2008) (quotation and citation omitted).

Accordingly, I conclude that the bankruptcy court did not make sufficient factual findings to determine whether Reuter is vicariously liable for Brown's fraud under Missouri law for this court to adjudicate the claim for the first time on appeal.

---

[11] Q. I think you've indicated that you believe he was the cause of the problems with these investments. Did that ever cause you—
A. True.
Q. —to consider terminating him from his position?
A. You lost your time line. I resigned months before we determined that he was the probable cause of the problems.
Q. So it wasn't until he was arrested that you determined he was the probable cause of the problems?
A. Correct.

[12] Although the two determinations are very similar, they are not the same.

As a result, I would remand the case to the bankruptcy court to allow it to make this determination.

_____