# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1465

_____

Tana S. Cutcliff; James A. Fields; Joshua P. Haeflinger; LaDonna S. Henderson,
(as Trustee for LaDonna S. Henderson Living Trust); Patricia A. Reitz, (as Trustee
for Frances L. Reitz Trust); Terry J. Schippers; James D. Teegarden, II; Michael S.
Trom; James D. Fields

*Plaintiffs - Appellants*

v.

Nathan Paul Reuter; Kathleen Reuter

*Defendants - Appellees*

Vertical Group, LLC

*Defendant*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: November 14, 2017
Filed: May 4, 2018

_____

Before COLLOTON and GRUENDER, Circuit Judges, and HOLMES,[1] District
Judge.

_____

[1]The Honorable P.K. Holmes, III, Chief Judge, United States District Court for
the Western District of Arkansas, sitting by designation.

GRUENDER, Circuit Judge.

Appellants (the "Creditors") are attempting to collect on judgments against Vertical Group, LLC ("Vertical") and Nathan Reuter by levying assets now belonging to Nathan's wife, Kathleen. For the reasons that follow, we affirm the district court's[2] orders granting summary judgment to Kathleen and to Nathan and denying partial summary judgment to the Creditors.

## I.

As we have previously explained, the Creditors are a group of victims defrauded by a Ponzi scheme run by Nathan and several associates under the aegis of Vertical. *See Cutcliff v. Reuter*, 791 F.3d 875, 878-80 (8th Cir. 2015).

In 2006, the Creditors brought suit against Nathan and Vertical to recover their lost investments. Vertical failed to defend that action, and the district court entered an order of default without awarding damages. For his part, Nathan filed for bankruptcy protection, and the district court closed the original matter pending the outcome of the bankruptcy proceedings. The bankruptcy court awarded the Creditors actual and punitive damages. *Cutcliff v. Reuter (In re Reuter)*, 427 B.R. 727, 766-68, 779 (Bankr. W.D. Mo. 2010), *aff'd*, 443 B.R. 427 (B.A.P. 8th Cir. 2011), *aff'd*, 686 F.3d 511 (8th Cir. 2012). The district court then reopened the Creditors' original case and entered a final judgment against Vertical with damages. *Cutcliff v. Reuter*, No. 2:06–cv–04123–NKL, 2014 WL 229179, at *3 (W.D. Mo. Jan. 21, 2014).

---

[2]The Honorable Nanette K. Laughrey, United States District Judge for the Western District of Missouri.

The present appeal arises from a creditors' bill that the Creditors filed to execute these judgments.[3] Because Nathan and Vertical are unable to satisfy these judgments themselves, the Creditors are targeting assets that formerly belonged to Nathan and Kathleen as tenants by the entirety. The Reuters transferred these assets to a revocable trust in 2005 (the "Trust").[4] However, Kathleen revoked the Trust and transferred the assets to her exclusive possession. Thus, the Creditors seek to levy assets now held exclusively by Kathleen.

To do so, the Creditors allege that Vertical was a "sham company" that masked an underlying partnership (the "Tortfeasor Partnership") consisting of the Reuters, as tenants by the entirety, and the other individuals who perpetrated the fraud. They seek to pierce Vertical's corporate veil; reach the Tortfeasor Partnership, including the Reuters' tenancy by the entirety; and levy the Reuters' assets, which are now owned individually by Kathleen. In the alternative, the Creditors allege that Nathan fraudulently transferred his portion of the Trust to Kathleen.

Nathan, Kathleen, and the Creditors each sought some form of summary judgment. The district court denied the Creditors' motion for partial summary judgment, granted Kathleen summary judgment on all claims pertaining to her, and granted Nathan summary judgment on all counts related to the Trust. Pursuant to the parties' stipulation, the district court dismissed the remaining claims. The Creditors timely appealed.

---

[3]"A creditor's bill is an equitable remedy available to a creditor who seeks to enforce the payment of debts out of assets that cannot be reached by traditional means of execution on a judgment established in a suit at law." *Peerless Indus., Inc. v. Estes*, 779 S.W.2d 332, 333 n.2 (Mo. Ct. App. 1989).

[4]Under Missouri law, when a husband and wife hold property as tenants by the entirety, they are treated as a single unit. Thus, each spouse owns the whole property, not a share or part. *Ronollo v. Jacobs*, 775 S.W.2d 121, 123 (Mo. 1989).

## II.

We review *de novo* the district court's grant of summary judgment. *Tension Envelope Corp. v. JBM Envelope Co.*, 876 F.3d 1112, 1116 (8th Cir. 2017). A motion for summary judgment should be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

As mentioned, the Creditors first seek to pierce Vertical's corporate veil to reach the Tortfeasor Partnership. *See Saxton v. St. Louis Stair Co.*, 410 S.W.2d 369, 376 (Mo. Ct. App. 1966). Assuming they are able to pierce the veil, the Creditors further argue that Nathan's interest in Vertical was created, funded, and held by the Reuters as tenants by the entirety. Because all partners are jointly and severally liable for the partnership's debts and obligations, *see* Mo. Rev. Stat. § 358.150.1, the Creditors maintain that the Reuter entirety is liable for the Tortfeasor Partnership's obligations, *see Dwyer v. ING Inv. Co.*, 889 S.W.2d 902, 906 (Mo. Ct. App. 1994). In sum, the Creditors' first claim hinges on showing that Nathan's share in the Tortfeasor Partnership in fact belonged to the Reuters as a married couple rather than to Nathan alone.

Leaving aside the question whether the Creditors have made a sufficient showing to justify piercing the corporate veil, we conclude that the Creditors' tenancy-by-the-entirety theory fails under Missouri law. As an initial matter, Missouri generally employs a "weak" presumption that purchases made from entirety funds are also entirety property. *See State ex. rel. State Highway Comm'n of Mo. v. Morganstein*, 649 S.W.2d 485, 489 (Mo. Ct. App. 1983) ("In the absence of other factors, a tenancy by the entirety is presumed to follow entirety property on re-investment."); *Cooper v. Freer*, 385 S.W.2d 340, 345 (Mo. Ct. App. 1964) (describing a "weak" presumption that property purchased with entirety funds takes on the character of entirety property). Because contributions to establish and sustain

-4-

Vertical came from the Reuter entirety, the Creditors argue that Nathan's interest in the Tortfeasor Partnership actually belonged to Nathan and Kathleen as tenants by the entirety due to the presumption.

While Missouri has recognized a partnership interest held by two spouses as tenants by the entirety, it has done so only when there has been evidence of both spouses' clear intent to hold the partnership as a married couple. *See Wehrheim v. Brent*, 894 S.W.2d 227, 228-30 (Mo. Ct. App. 1995). Indeed, in *Wehrheim v. Brent*, the case relied on by the Creditors, a written partnership agreement expressly identified the partners as multiple tenancies by the entirety. *See id.* at 228. Where there is no evidence of a written or oral partnership agreement, "the only way a partnership can be established is by implication and this can only be done where there is clear, cogent and convincing evidence that the purported partners have made a definite and specific agreement." *Morrison v. Labor & Indus. Relations Comm'n*, 23 S.W.3d 902, 909 (Mo. Ct. App. 2000) (alterations and internal quotation marks omitted). "The clear, cogent and convincing standard is met only when the evidence instantly tilts the scales in favor of the affirmative when weighed against the evidence in opposition and the fact finder is thereby left with the abiding conviction that the evidence is true." *Id.* Applying "a 'weak' presumption that property purchased with entirety funds takes on the character of entirety property" fails to meet the higher evidentiary threshold necessary to establish the existence of a partnership. *See Cooper*, 385 S.W.2d at 345.[5]

---

[5]The concurring opinion suggests that because we concluded previously that it was not clear error for the bankruptcy court to find that "a partnership existed between [Nathan] Reuter and [Daryl] Brown," *In re Reuter*, 686 F.3d at 517, the heightened standard of proof does not apply to the separate question of who owns Nathan's partnership interest. *Post*, at 9-10. However, the Creditors are not asserting that Kathleen merely shared ownership of Nathan's partnership interest—that is, his share of the profits and surplus. *See* Mo. Rev. Stat. § 358.260. Instead, the Creditors contend that the Reuter entirety—not Nathan Reuter individually—established a

The Creditors attempt to establish the requisite intent by pointing to Nathan's affirmative response to a leading question suggesting that both he and Kathleen would have profited if Vertical had been successful.[6] However, Nathan's indication that he and Kathleen hoped to profit fails to "instantly tilt the scales," especially in light of Nathan and Kathleen's marital relationship. *See Fish v. Fish*, 307 S.W.2d 46, 52 (Mo. Ct. App. 1957) ("[A]cts and circumstances between spouses may not have the same significance . . . as the same acts and circumstances between strangers might have."). Moreover, the Creditors point to no written or oral partnership agreement or any other evidence related to the partnership "consistently identif[ying the Reuters] as tenants by the entiret[y]." *See Wehrheim*, 894 S.W.2d at 230. As a result, on the record before us, no reasonable jury could conclude that there was "clear, cogent and convincing" evidence that the Reuters participated in the Tortfeasor Partnership as a married couple. Therefore, the district court did not err in granting summary judgment to the Reuters on the Creditors' claims seeking to pierce the corporate veil and reach the assets that once belonged to the Reuters as a married couple.[7]

---

partnership with the other tortfeasors and is therefore responsible for partnership liabilities. Because we have not yet addressed the issue of whether a partnership was established between the Reuters by the entirety and Brown, we apply the heightened standard of proof.

[6]During his deposition, Nathan was asked, "Just to be clear, you were expecting eventually that you personally and Kathy would receive money back from the company out of the deals that [Vertical] was trying to put together?" Nathan responded, "If a company makes a profit, you share in the proceeds of the company. It was a for profit company. You would hope that if you work that hard, that you would make a profit."

[7]Count II of the creditors' bill advances the alternative theory that Kathleen herself was a partner of the Tortfeasor Partnership. While many of the Reuters' arguments address this question, the Creditors' reply brief emphasizes that "the only aspects of the Creditors' Bill that are at issue on appeal are: (i) The parts of Counts I and IV that seek to execute the Vertical Judgment against the joint and several assets of Kathleen and Nathan . . . based on their use of Vertical as their

-6-

The Creditors also advance an alternative theory of recovery. They argue that Nathan owned 50 percent of the Trust as its settlor, and they seek to levy his portion. Because Kathleen now owns those assets, they allege that Nathan fraudulently transferred his settlor's interest to Kathleen when the Trust was revoked.

However, the parties disagree as to when the Trust was revoked. Kathleen attempted to revoke the Trust on May 4, 2010. If that revocation was valid, then the Creditors' fraudulent-transfer theory would be barred by the four-year statute of limitations. *See* Mo. Rev. Stat. § 428.049(1) & (2). But the Creditors claim the automatic stay mandated by 11 U.S.C. § 362(a)(3) prevented Kathleen's 2010 revocation from having any effect. The Creditors argue that revocation did not occur until Kathleen again revoked the trust on May 13, 2016—bringing the Creditors' action within the statute of limitations.

We need not resolve this disagreement, however, because the Creditors' alternative theory also presupposes that Nathan was a settlor of the Trust. As the bankruptcy court explained in 2013, Nathan was not a settlor because he had no right to revoke the Trust or withdraw the property he contributed. *See Olsen v. Reuter (In re Reuter)*, 499 B.R. 655, 675 (Bankr. W.D. Mo. 2013).

---

instrumentality; and (ii) The parts of Count V that plead a fraudulent transfer against Nathan . . . ." Because we do not address questions not clearly presented for review on appeal, we need not consider whether Kathleen was a partner in her own right. *See Bechtold v. City of Rosemount*, 104 F.3d 1062, 1068 (8th Cir. 1997). Were we nonetheless to do so, the contributions from entirety property and Nathan's testimony about expected profits fail to provide "clear, cogent and convincing evidence" that Kathleen herself was a partner, *see Morrison*, 23 S.W.3d at 909, especially because there is no evidence that Kathleen assisted in the management or operation of the Tortfeasor Partnership, *see Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co.*, 828 F.2d 1245, 1249 (8th Cir. 1987).

Generally, a settlor is a person "who creates, or contributes property to, a trust." Mo. Rev. Stat. § 456.1-103(23). A settlor may revoke or amend a revocable trust like the one at issue here. *See id.* § 456.6-602. But Missouri includes an exception to the general definition of settlor when more than one person contributes property to a trust: "[E]ach person is a settlor of the portion of the trust property attributable to that person's contribution *except to the extent another person has the power to revoke or withdraw that portion pursuant to the terms of the trust.*" *Id.* § 456.1-103(23) (emphasis added).

Kathleen expressly reserved the right to revoke or withdraw Nathan's portion under Article X.B. of the Trust: "I reserve the right from time to time during my life, by written instrument delivered to the trustee, to amend or revoke this instrument in whole or in part and the right to withdraw any or all of the assets of the trust at any time . . . ." Nathan has no such power, and, as co-trustee, he is given no authority to revoke the trust or withdraw his contribution. As a result, the bankruptcy court correctly determined that Nathan did not own 50 percent of the Trust as a settlor, and the Creditors' allegation that he fraudulently transferred his share to Kathleen necessarily fails.

## III.

For these reasons, we affirm.

COLLOTON, Circuit Judge, concurring in part and concurring in the judgment.

I concur in the judgment but do not join all of the court's rationale.

In an effort to execute their judgment against Vertical LLC on assets owned by Kathleen Reuter, the creditors make a two-step argument. First, the creditors contend that the court should pierce Vertical's veil to reach the assets of a tortfeasor partnership that was formed by Nathan Reuter and Daryl Brown. Second, they maintain that Nathan and Kathleen Reuter owned Nathan's share in the tortfeasor partnership as tenants by the entirety, so that Kathleen is liable for the debts of the tortfeasor partnership. The court concludes that the second step fails and does not address the first. I do not join the court's rationale on step two, but conclude that the argument fails at step one.

In *Reuter v. Cutcliff (In re Reuter)*, 686 F.3d 511 (8th Cir. 2012), this court held that it was not clear error for the bankruptcy court to conclude that a tortfeasor partnership existed between Nathan and Brown. *Id*. at 517. Because Nathan used funds owned jointly with his wife Kathleen to establish and sustain the partnership, the creditors argue in their second step that Nathan's interest in the partnership belonged to Nathan and Kathleen Reuter as tenants by the entirety. Our prior decision did not address who owned the partnership interest that was created by Nathan's involvement with Brown. *See Wehrheim v. Brent*, 894 S.W.2d 227, 229 (Mo. Ct. App. 1995) ("[A] partnership may be held in a tenancy by the entireties.").

The court here concludes as a matter of law that Nathan alone owned the partnership interest, because there is not "clear, cogent, and convincing evidence" that Nathan and Kathleen owned the interest as tenants by the entirety. This is a debatable application of Missouri law that we should be reluctant to adopt. Missouri courts require clear and convincing evidence to show that a partnership has been "established." *Morrison v. Labor & Indus. Relations Comm'n*, 23 S.W.3d 902, 907-

-9-

09 (Mo. Ct. App. 2000). Our prior decision, however, settled that a partnership was established by Nathan's involvement with Brown.

This appeal concerns a separate dispute about who owns the partnership interest that was identified in our prior decision. As in *Werheim*, "[w]hile the parties here do not dispute the existence of the partnership, the nature of it is in dispute." 894 S.W.2d at 228. There is no Missouri authority dictating that the district court should decide ownership by a heightened standard of proof rather than by a preponderance of the evidence. And it would be anomalous to do so. If there is not clear and convincing evidence that *either* Nathan *or* the Reuter entirety owned the partnership interest, but only a preponderance of the evidence pointing to one or the other, then we would be left with a partnership interest that has no owner. It seems more likely that Missouri would apply the traditional preponderance standard to resolve this dispute. Under that standard, in view of the weak presumption applicable to entirety funds and Nathan's testimony, *ante*, at 5-6, there is a genuine dispute of material fact about whether the partnership interest is owned by Nathan or the Reuter entirety.

Of course, whoever owns or holds the partnership interest is the party that established a partnership with Brown; § 358.260 of the Missouri revised statutes is not at issue. *Cf. ante*, at 5 n.5. But our first opinion did not address whether there was clear and convincing evidence that Nathan individually, as opposed to the Reuter entirety, established the partnership. If that question were already resolved, then it would be unnecessary to discuss whether "Nathan's interest in the Tortfeasor Partnership actually belonged to Nathan and Kathleen as tenants by the entirety," *ante*, at 5; a simple citation to the prior decision would suffice. By now suggesting that no partnership could be formed unless there was clear and convincing evidence that *Nathan individually* established it, or clear and convincing evidence that *the Reuter entirety* established it, the majority unfortunately calls into question whether there was a partnership at all.

-10-

But even assuming that the Reuter entirety owned an interest in the tortfeasor partnership, the creditors must pierce the veil of Vertical LLC to recover from Kathleen. The ordinary grounds to pierce a veil in Missouri are that the entity is either the instrumentality or the alter ego of the defendant. *See Fleming Cos. v. Rich*, 978 F. Supp. 1281, 1303 (E.D. Mo. 1997) (summarizing Missouri law). The creditors disclaim any reliance on an "alter ego" theory. While they do advance what they call an "instrumentality" theory, they do not argue that the facts here meet the three-part instrumentality test under Missouri law. *See id.*

The creditors rely instead on *dicta* in *Saxton v. St. Louis Stair Co.*, 410 S.W.2d 369 (Mo. Ct. App. 1966), where the state court of appeals considered a workers compensation claim. The issue was whether a man who claimed workers compensation benefits was an employee of the company in whose manufacturing plant he was injured. The claimant asserted that he was an employee; the company countered that he was a "partner" in the business.

In analyzing the dispute, the court said "[i]t is possible for parties to have followed such a course of conduct that it becomes apparent that they intended to carry on as partners because their arrangement of the affairs of the particular enterprise was such as to indicate that they operated by mutual agreement outside the confines of corporation law." *Id.* at 376. In that situation, the court opined, "the time has arrived to pierce the corporate veil"—meaning, in *Saxton*, that the claimant could be treated as a partner in the company despite his assertion that he was an employee in service of a corporation. The court in *Saxton* ultimately held, however, that the claimant *was* in the controllable service of a corporation, and was thus an employee.

*Saxton* was a workers compensation case, not a dispute about imposing individual liability on persons who compose a corporate entity. Since 1966, no Missouri court has invoked *dicta* from *Saxton* to pierce a corporate veil and reach the assets of a shareholder or member without a showing that an entity was either an

instrumentality or an alter ego of an individual who composed it. As the creditors do not argue that Vertical LLC was an alter ego or a true "instrumentality" of the tortfeasor partnership, I conclude that the creditors have not established grounds to pierce the veil of the LLC under Missouri law. I also agree with the court's rejection of the creditors' alternative theory that Nathan fraudulently transferred his settlor's interest to Kathleen. *Ante*, at 7-8. I therefore concur in the judgment.

_____